**In re WANG LABORATORIES, INC., Debtor.**

**Bankruptcy No. 92–18525–WCH.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 26, 1992.

Michael Cook, Skadden, Arps, Meagher & Flom, Boston, Mass., for debtor.

Kathleen Downing, Boston, Mass., Asst. U.S. Trustee.

### DECISION ON AUTHORIZATION TO EMPLOY FINANCIAL ADVISORS

WILLIAM C. HILLMAN, Bankruptcy Judge.

On August 18, 1992 Wang Laboratories, Inc., debtor-in-possession, ("Debtor") moved for an order under 11 U.S.C. §§ 327, 328, & 504, Fed.R.Bankr.P. 2014(a) & 5002, and Local Bankr. Rule 31 authorizing the employment and retention of Smith Barney, Harris Upham & Co., Inc. ("Smith Barney") as financial advisors to Debtor.

Section 327 of the Bankruptcy Code ("Code") permits the trustee or debtor-in-possession to employ attorneys, accountants and other such "professional persons" to aid in the administration of the bankrupt estate. Section 327 is designed to insure in advance of employment of a professional, both that the employment is necessary to the estate and that the professional is able to serve in the best interest of the estate. *In re Cormier,* 35 B.R. 424, 425 (D.Me. 1983). The ultimate determination of whether professional representation is in the best interest of the estate falls within the sound discretion of the Court. *In re Glosser Bros.,* 102 B.R. 38, 39 (Bankr. W.D.Pa.1989).

This Court is not persuaded that Debtor's employment of Smith Barney as a financial consultant is either necessary or in the best interest of Debtor's estate. Debtor has already obtained this Court's approval to employ Skadden, Arps, Slate, Meagher & Flom ("Skadden, Arps") as le-

gal counsel and Ernst & Young ("E & Y") as its accountants and financial advisors. The retention and employment of Smith Barney is not necessary for the estate because most, if not all, of Smith Barney's proposed services are duplicative of the services to be performed by either Skadden, Arps or E & Y.

Debtor's motion to employ Smith Barney set forth the following services Smith Barney plans to render:

1. review and analyze the company's historical results, current business prospects and financial projections;

2. review and analyze with management, Debtor's strategic plans relating to its business segments;

3. identify, develop and analyze various financial alternatives available to Debtor based on its strategic business plans leading to the formation of a plan of reorganization ("the Plan");

4. identify and contact possible sources of new capital for Debtor;

5. make representations to Debtor's Board of Directors relating to the formulation and implementation of the Plan;

6. advise and assist in the implementation of the Plan by Debtor including negotiating with the various constituencies and assisting Debtor with the preparation of documents embodying the Plan;

7. assist Debtor in responding to information requests from the Debtor's various creditors' committees;

8. provide expert testimony in Bankruptcy Court;

9. identify and contact potential and business partners with respect to certain of Debtor's assets and business segments as identified by Debtor; and

10. advise Debtor with respect to the impacts upon Debtor's international structure and operations of the Proceedings, the Debtor's strategic plans and the Plan.

This Court is hard pressed to understand the necessity for Smith Barney to perform all of these services. Items 3, 4, 5, 6, and 7 are, or should be, within the realm of Debtor's counsel. Skadden, Arps represented itself to this Court as a law firm with extensive experience in and knowledge of business reorganizations under Chapter 11 of the Code. If counsel's representations are correct, and the Court has no reason to believe otherwise, Skadden, Arps' expertise should certainly include the ability to bring sales, create, negotiate and implement a plan of reorganization.

The remaining items on Smith Barney's list of services fall within the realm of Debtor's accountants. E & Y is a "Big 6" national accounting firm which employs teams of "workout" and bankruptcy specialists to its clients. E & Y is more than capable of handling the remaining services on Smith Barney's list.

█ The collective expertise of Debtor's accountants and legal counsel is clearly substantial and certainly encompasses the categories of services listed by Smith Barney. Smith Barney's services are therefore unnecessary. Debtors can not envelop themselves with duplicative advisors at the expense of the estate. *In re Glosser Bros.*, 102 B.R. 38 (Bankr.W.D.Pa.1989). "A party's request for independent professional services should be denied if such services are clearly duplicative and wasteful." *In re Saxon Industries*, 29 B.R. 320, 322 (Bankr.S.D.N.Y.1983).

Even if Debtor could gain some potential benefit from the proposed services of Smith Barney that are not redundant to the services of the other employed professionals, that benefit would be severely offset by the tremendous expense to the estate of hiring Smith Barney. This would not be in the best interest of the estate.

█ Pursuant to § 327 of the Code, the Bankruptcy Court has control over professional representation of the bankrupt estate to enable the Court to contain the estate's expenses. *In re Haley*, 950 F.2d 588, 590 (9th Cir.1991). A cost-benefit analysis must be made at all times in order to distribute as much money to creditors as quickly as possible. *In re Hutter Construction Co., Inc.*, 126 B.R. 1005, 1012–1013 (Bankr.E.D.WI.1991).

796

Section three of Smith Barney's Retention Agreement with Debtor ("the Agreement") addresses compensation. Under the Agreement, Debtor is to pay Smith Barney a monthly cash fee of $175,000. In addition, Debtor is to pay "all reasonable out-of-pocket expenses incurred by Smith Barney in connection with its services ...; and all reasonable fees and expenses of Smith Barney's counsel relating to services to be rendered ..."

Attorneys and other professionals authorized to be employed by this Court understand that their compensation is subject in all particulars to the stringent accounting requirements of Local Rule 34; to the detailed requirements of *In re Bank of New England Corp.*, 134 B.R. 450 (Bankr. D.Mass.1991); and, in the final analysis, to the Court's 20/20 hindsight under the final sentence of Code § 328(a). Time must be substantiated to the tenth of an hour. Each expense must be detailed and justified. In contrast, Debtor in this case would be paying Smith Barney an uncertain figure that would be in excess of $2.1 million annually, without even a suggestion of accountability.

There has been a flood of investment bankers/advisors into the bankruptcy theatre in recent years due to the change and complexity of Chapter 11 cases and reduced merger and acquisition opportunities. *In re Drexel, Burnham, Lambert Group, Inc.*, 133 B.R. 13, 24 (Bankr. S.D.N.Y.1991).

The recent gravitation of investment bankers/advisors to "the big" Chapter 11 cases has generated a growing trend of disfavor among bankruptcy judges. Judge Paskay wrote: "This Court is not unaware that the world of investment banking is indeed a strange, but wonderful place where a large amount of money is spent, generally at the expense of debtors in Chapter 11." *In re Hillsborough Holdings Corp.*, 125 B.R. 837, 839 (Bankr.M.D.Fla. 1991). Judge Conrad opined: "Whenever we have dealt with investment bankers and financial advisors we have been left with the strong impression that for them the debtor is the cash cow to be milked, Chap-

ter 11 the milking parlor, and the Judge the milking stool." *Drexel, Burnham,* 133 B.R. at 26. Debtor has not demonstrated that the services of Smith Barney are either necessary or in the best interest of the estate. An order denying the application will be entered.