**In re WANG LABORATORIES, INC., Debtor.**

**Bankruptcy No. 92–18525–WCH.**

United States Bankruptcy Court, D. Massachusetts, E.D.

April 30, 1993.

Decision Denying Reconsideration May 26, 1993.

Michael L. Cook, Skadden, Arps, Slater, Meagher & Flom, New York City, for debtor.

Kathleen R. Downing, Boston, for U.S. Trustee.

Whitton E. Norris, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, for Price Waterhouse.

Elizabeth M. Leonard, Hale and Dorr, Boston, for Official Unsecured Creditors' Committee.

## DECISION RE FIRST APPLICATION FOR ALLOWANCE OF COMPENSATION AND EXPENSES OF PRICE WATERHOUSE

WILLIAM C. HILLMAN, Bankruptcy Judge.

On the Application of Official Unsecured Creditors' Committee for Authority to Retain Price Waterhouse" (the "Committee"; the "Application"), Price Waterhouse ("PW") was authorized to be retained by the Committee. PW has filed an application seeking payment of fees of $719,271 and reimbursement of expenses of $91,-920.55 for the period ending December 31, 1992. ("PW App."). The United States Trustee filed an objection to certain aspects of the application ("UST Obj.") and PW replied. ("PW Response").

### Background

On December 9, 1991, this Court issued a comprehensive decision regarding the retention of professionals and their fees and expenses. *In re Bank of New England Corp.*, 134 B.R. 450 (Bankr.D.Mass.1991) (*"BNE"* hereafter), *aff'd* 142 B.R. 584 (D.Mass.1992). That decision announced the Court's intention "to adopt these same guidelines as general principles in other and unrelated cases." *Id.* at 453. Since that time, the Court has repeatedly evaluated applications to employ and fee applications according to the *BNE* criteria. *See, e.g., In re Wang Laboratories, Inc.*, 143 B.R. 794, 796 (Bankr.D.Mass.1992). ("Attorneys and other professionals authorized to be employed by this Court understand that their compensation is subject in all particulars to the stringent accounting requirements of Local Rule 34; to the detailed requirements of [*BNE*]; and, in the final analysis, to the Court's 20/20 hindsight under the final sentence of § 328(a)").

### Analysis

PW divides its efforts into forty-five categories. Some of the distinctions seem artificial and designed to create smaller subtotals than would otherwise appear. For example, preparation for attendance at

meetings of the Committee is separated from time spent at the meetings themselves. The application also fails to satisfy the requirements of Local Rule 34. Future applications must summarize the service information for each task at the end of the applicable narrative section. *See* Local Rules, Chart 2, p. 51. The lack of that information has caused the Court to expend more time on this matter than should have been necessary.

Generally speaking, the Court does not fault the staffing or operational practices used by PW in its authorized functions. This is a large case, and it does present certain complexities. Where a number of professional firms are employed, they must coordinate. No problem is noted in the area of overlapping services in the present application.

The significant concerns, either raised by the United States Trustee or by the Court *sua sponte* are:

### Recordkeeping

█ PW seeks $6,357 for "the maintenance, organization, and categorization of the many documents received from the Debtor." PW App.Ex. C at 1. The United States Trustee asserts that such expenses are an administrative expense not separately compensable, citing *BNE* at 459.

The United States Trustee is correct; the amount will not be paid.

### Customer Visits

█ PW seeks $48,088 for services in connection with customer visits. This function is explained as follows:

"The [Committee] asked [PW] to conduct a series of interviews with existing customers to gain an understanding of the customers' use of Wang products and services and how Wang's new products and services may fit with the customers' plans for information systems in the future." PW App. at 11.

Performance of this task involved sending senior PW staff around the country to visit with Wang customers. The United States Trustee objects that the trips may have been unnecessary. UST Obj. at 2. The Court's concern is deeper.

In the Application the following representations are made:

"The Committee wishes to retain Price Waterhouse *as accountants to provide auditing, accounting and tax related services,* as requested by the Committee. Price Waterhouse may *also* be called upon *to perform various professional consulting services,* at the Committee's discretion, *including but not limited to the following:*

a. assisting the Committee in the performance of *any financial examination* of the Debtor as may be required from time to time;

b. *reviewing cash or other projections* of the Debtor *and submissions to the Court of reports and statements* of receipts, disbursements and indebtedness;

c. *consulting* with the Committee and its counsel *in connection with the operation of and financial matters relating to the Debtor's ongoing activities,* including assumption and rejection of any leases and executory contracts;

d. assisting with the *development and analysis of financial aspects of reorganization plan proposals* and analyzing those presented by the Debtor;

e. *analyzing financial aspects of the business plan* or plans the Debtor may formulate;

f. assisting in the evaluation of *potential preferences and fraudulent transfers;* and

g. assisting the Committee in the *analysis of the financial and accounting aspects* of the Debtor's non-U.S. subsidiaries." (emphasis added). Docket No. 182.

The order authorizing employment specified that PW was retained "under the terms set forth in the Application." Docket No. 187. PW was retained to handle financial matters and financial matters only. The language of the Application is directed to that single goal. The principle of *ejusdem generis* tells us that the phrase "including but not limited to" opens up the

field only to activities of the same nature as those specified. *Berniger v. Meadow Green–Wildcat Corp.*, 945 F.2d 4, 7–8 (1st Cir.1991). This becomes important in the review of the services actually performed. Both the Committee and PW acted as if PW's engagement were to act as a general business consultant, in additional to performing the traditional services of accounting professionals.

The services performed under this caption go far beyond the authorized scope of employment.

This is not judicial nit-picking or an application of *strictissimi juris*. If the Court had been informed that it was the intention of the Committee to use PW to perform the marketing research function of customer visits (and others noted below) with PW personnel charging at a blended rate of $206, the Application would have been summarily denied. There has been no demonstration either that the function was required to be performed or that PW was the appropriate organization to accomplish that end.

Compensation for "Customer visits" is denied.

### Technical consultants

 The Committee directed PW to manage the process of selecting certain technical advisors. Why the Committee felt that PW could best select persons who could evaluate "the robustness of the Debtor's new software products" and the ease with which the products could be "ported to other hardware platforms and operating system requirements," PW App., Ex. C at 9, leaves the Court baffled. It did not authorize the retention of a technical employment agency; it allowed the Committee to hire financial advisors and consultants. No activity yet mentioned is further afield from the scope of employment.

Compensation sought in the amount of $17,805 is denied.

### Service agreement analysis

 This category results in a $34,763 charge for PW's efforts in gaining "a complete understanding" of what is stated to

be one of the more significant assets of the Debtor. PW App., Ex. C at 10. The Court does not understand why the analysis in depth undertaken here was necessary. It certainly goes beyond the scope of employment.

A very broad reading of the activities undertaken could lead to the conclusion that a portion of the services performed were necessary and appropriate. A fee of $15,000 will be allowed. This can be no more than a "rough justice" approximation, but data are not available to allow a more reasoned approach.

### Manufacturing operations

 PW evaluated Debtor's restructuring of its manufacturing facilities, charging $4,364 for the service. First of all, this was not authorized service. Secondly, the Court finds it hard to accept that such an analysis, involving "the elimination of approximately 1,400 manufacturing jobs and the complete closing of five locations worldwide", PW App., Ex. C at 15, could be accomplished for such a nominal price.

Compensation is denied.

### Technetron

PW staff attended the annual Wang users conference. "Through attendance at this conference, [PW] was able to obtain first hand information directly from the user community relating to customers' concerns about the Debtor's future viability and to gage the public reaction to new product announcements." PW App., Ex. C at 17.

What has been said previously about PW's involving in marketing analysis applies here as well. The requested fees of $11,866 are denied.

### Time administration

 PW seeks $14,094 for "the preparation of detailed daily time log sheets by the Applicant's personnel in accordance with the requirements of the U.S. Bankruptcy Code, the Bankruptcy Court and the U.S. Trustee." PW App., Ex. C at 19. The United States Trustee retorts that "these

log sheets should be prepared contemporaneously with each individual task and therefore should not represent an additional cost to the estate." UST Obj. 3. To this response PW submits a detailed explanation of how the procedure which resulted in this charge came about and how it does not result in a greater charge to the estate. PW gives assurances that the procedure has been changed to conform to the suggestion of the United States Trustee.

The explanation is adequate and the charge will be allowed.

### Expenses

PW's chart of expenses for which reimbursement is sought, PW App., Ex. G, is not a model of clarity. To determine exactly what category of expense is involved, one must analyze both the row and column headings. Having accomplished that task, we find an initial request for $91,920.55 in expenses which are divided as follows:

| | |
|---|---|
| Airfare | $24,058.67 |
| Ground Transport | 8,012.56 |
| Lodging | 24,212.52 |
| Meals | 4,496.45 |
| Computer rental | 4,284.00 |
| Dun & Bradstreet | 93.00 |
| Federal Express | 1,119.41 |
| Misc.—Franceschi | 13.51 |
| Misc.—Jerritts | 160.42 |
| Misc.—Kopacz | 556.56 |
| Misc.—Krillenberger | 18.74 |
| On–Line Services | 4,707.00 |
| Reproduction | 18,209.76 |
| Telecopier | 1,103.00 |
| Telephone | 874.95 |
| | $91,920.55 |

The United States Trustee had objected to a number of these expenses, and PW asks that we defer their request for reimbursement of the items for meals, travel expenses for "out of district" employees, computer rental and on-line services until the next application, so that substantiation can be provided to the United States Trustee. The Court will accede to the request in part and put off consideration of airfare, ground transportation, lodging, computer rental, and On–Line Services expenses for another day.

■ There is no issue about meals. "The Court adopts a general rule disapproving of charging meals, local or away, to a particular case. The cost of meals is normally an item of personal overhead." *BNE* at 458. *See also id.* at 460. Reimbursement of meal expenses is denied.

The United States Trustee challenges the $18,209.76 item for Reproduction as unsubstantiated. UST Obj. at 5. PW relies that it contracts out its copying function and that "it is virtually impossible" to calculate actual costs. It suggests an estimate of twelve cents a page as the amount being charged, but that is only an estimate. PW Response at 9.

■ The Court has no objection to authorizing payment for copying and binding. *BNE* at 456. But what PW has accomplished by its technique of handling the expenses of reproduction is to convert what could have been a reimbursable expense, if properly accounted for, into a item of general overhead. "Items of overhead will not be allowed." *Ibid.*

■ Telecopies are charged to PW's clients at $3.00 for the first page and $1.00 for additional pages. PW Response at 10. That technique of charging, which PW estimates at $1.25–$1.35, will not be accepted. *BNE* at 458. The expense is disallowed.

■ The charges for Dun & Bradstreet, miscellaneous expenses of the various employees, and telephone expense are disallowed as unsubstantiated. Federal Express charges are reimbursable only if substantiated. *BNE* at 464. They have not been. "[A]n applicant submits a deficient fee application at its peril." *In re Smuggler's Beach Properties, Inc.*, 149 B.R. 740, 743; (Bankr.D.Mass.1992); *BNE* at 467–68.

### Conclusion

PW is awarded net interim compensation for the period ending December 31, 1992, of $611,028, as follows:

| Fee requested | | $719,271 |
|---|---|---|
| Less | | |
| Recordkeeping | $ 6,357 | |
| Customer visits | 48,088 | |
| Technical consultants | 17,805 | |
| Service agreement analysis | 19,763 | |
| Manufacturing operations | 4,364 | |
| Technetron | 11,866 | (108,243) |
| | | $611,028 |

Against this amount should be credited all interim payments made, whether denominated as for fees or expenses.

Expenses are disallowed except for those items specified in the above discussion as reserved for later consideration.

An appropriate order will enter.

## DECISION ON MOTION FOR RECONSIDERATION OF PRICE WATERHOUSE

May 26, 1993.

Price Waterhouse ("PW") was retained as accountants to the Official Unsecured Creditors' Committee (the "Committee") under an order of this Court. It filed an application for interim compensation in the amount of $719,271 which was allowed to the extent of $611,028.[1] *In re Wang Laboratories, Inc.*, 154 B.R. 392 (Bankr.D.Mass. 1993).

■ On May 13, 1993, PW moved for reconsideration of that order. It first alleges that the Court's conclusion that compensation would not be paid for certain services "was outside the scope of the issues raised by the parties, and was raised *sua sponte* by the Court, and not by the United States Trustee or any other party." *Motion to Reconsider* at 5. The implicit contention is that the Court cannot consider issues not raised by parties. This highly restrictive view of the Court's authority has been previously rejected by this Court, a position which was sustained by the District Court:

"Cooper's argument that the bankruptcy judge cannot raise issues *sua sponte* is misplaced: 'The bankruptcy judge can and must apply his own expertise *sua sponte*, if necessary, in order to be fair to both counsel and creditors because, in the final analysis, either excess generosity or extreme miserliness in allowing fees will reflect in the public perception of the system.'" *In re Bank of New England Corp.*, 142 B.R. 584, 588 (D.Mass.1992), quoting *In re Pettibone Corp.*, 74 B.R. 293, 300 (Bankr.N.D.Ill. 1987).

■ PW next argues that the Court's findings were mistaken, "due no doubt to the difficulty PW had effectively summarizing its services." *Motion to Reconsider* at 9. To prevail in this view, it must demonstrate newly discovered evidence or a manifest error of fact or law. *In re Bank of New England Corp.*, 142 B.R. 584, 587 (D.Mass.1992); *In re Mortgage Investors Corp.*, 136 B.R. 592, 598 (Bankr.D.Mass. 1992); *In re Wedgestone Financial*, 142 B.R. 7, 8 (Bankr.D.Mass.1992).

The Court has considered the new materials submitted by both PW and the Committee and fails to find either anything new or a manifest error.

The Committee urges that the Court consider compensating PW "under the analogous standard set forth in 11 U.S.C. § 503(b)(3) & (b)(4)." *Committee's Response to Motion for Reconsideration* at 5. The Court is not inclined to adopt that ingenious approach.

This is not the only case in which PW has run afoul of a judge in this District and for much the same reasons as set forth in the decision being reconsidered. On May 7,

---

**1.** Costs were also reduced but reconsideration of that action has not been sought.

1993, Chief Judge Queenan reduced fees sought by PW by 25%, terminated its participation in an interim fee order, and scheduled a hearing to consider whether its engagement as accountants to the creditor's committee should be terminated or curtailed. *In re Cumberland Farms, Inc.*, 154 B.R. 9 (Bankr.D.Mass.1993). That may have been a better approach to the issue than that taken by this judge, but for the moment it will be sufficient to deny the motion for reconsideration.

An order will enter.