**In re MORTGAGE & REALTY TRUST, Debtor.**

**Bankruptcy No. 90–08976–SB.**

United States Bankruptcy Court,
C.D. California.

Jan. 23, 1991.

Thomas Henry Coleman, Nick Franke and Mark Fields of Morgan, Lewis & Bockius, Los Angeles, Cal., for debtor.

Bernard Shapiro, P.C., and Daniel H. Slate of Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for unsecured creditors committee.

Harvey Miller of Weil, Gotshal & Manges, New York City, for Prudential Capital Corp.

Robert Greenfield and Susan R. Purcell of Stutman, Treister & Glatt, Los Angeles, Cal., for equity committee.

Patrick Grannan of Greenfield & Chimicles, Los Angeles, Cal., for class action claimants.

Rebecca J. Winthrop of Kelley, Drye & Warren, Los Angeles, Cal., for Mfrs. Hanover.

Nathan Feinstein of Piper & Marbury, Washington, D.C., for T. Rowe Price Associates.

Neal Jensen, Asst. U.S. Trustee, D. Mont., Great Falls, Mont. for the U.S. Trustee.

## OPINION ON CONDITIONS ON EMPLOYMENT OF FINANCIAL ADVISORS

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

The motions before the Court raise the issue of what conditions should be placed on the employment of investment advisors for the debtor and the committee of unsecured creditors in this case.

The Court holds that, while both the debtor and the creditors committee may employ investment advisors, such appointment is subject to four conditions: (1) the debtor may not indemnify the investment advisors; (2) the investment advisors are not entitled to a bonus unless the Court determines at the conclusion of the case that they have earned a bonus in consequence of their distinctive contributions to the success of the case; (3) the investment advisors must keep time records for each professional employee who performs services in this case, which include the date and description of the service performed and the amount of time spent (in billing increments of tenths of an hour or less); (4) any further professional needed by an investment advisor must be employed pursuant to a separate court order.

### II. RELEVANT FACTS

Debtor Mortgage & Realty Trust is a real estate investment trust that filed this Chapter 11 bankruptcy case on April 10, 1990. The debtor, according to its sched-

ules, has assets of approximately $600 million, and unsecured debt of approximately $400 million. The Court is informed that there is no secured debt. The United States Trustee has appointed both a committee of unsecured creditors and an equity committee, each of which is active and represented by counsel.

The debtor and the creditors committee have each filed an application with the Court for the appointment of a financial advisor. Over the opposition of the equity committee, the Court has approved the appointment of Dean Witter Reynolds, Inc. ("Dean Witter") as financial advisor for the debtor, and Asian Oceanic Real Estate Corporation ("Asian Oceanic")[1] as financial advisor to the committee of unsecured creditors. The equity committee has not sought the appointment of its own financial advisor.

After the Court's initial unpublished ruling the debtor has brought a motion for reconsideration of the denial of indemnification for its investment advisor. The committee of unsecured creditors neither opposes nor supports the motion. However, it takes the position that, if indemnification is allowed, its investment advisors should receive the same indemnity. The equity committee opposes indemnification for any investment advisor.

### III. ANALYSIS

#### A. *Indemnity*

Both Asian Oceanic[2] and Dean Witter[3] have requested that the estate provide

---

**1.** Asian Oceanic has since changed its name to Ahern & Partners.

**2.** The indemnity provision originally requested by Asian Oceanic is stated as follows in its letter agreement:

> MRT shall idemnify (sic.) Asian Oceanic and hold it harmless against any losses, claims, damages or liabilities to which Asian Oceanic may become subject arising in any manner out of or in connection with the rendering of services by Asian Oceanic hereunder unless it is finally judicially determined that such losses, claims, damages or liabilities resulted directly from the negligence or wrongful conduct of Asian Oceanic.

**3.** Dean Witter originally requested the Court's approval of the following indemnity provision:

a. The Company shall indemnify and hold harmless Dean Witter, its affiliates, directors, officers, agents and employees, and each other person controlling Dean Witter or any of its affiliates within the meaning of either section 15 of the Securities Act of 1933, as amended, or section 20 of the Securities Exchange Act of 1934, as amended (individually referred to as an "Indemnified Person"), from and against any and all claims, damages, losses, liabilities, costs and expenses (including, without limitations, any and all fees and disbursements of counsel) incurred in connection with investigating, preparing to defend or defending any

them indemnity in connection with their employment in this case. After the Court initially denied any indemnification whatever, Dean Witter made a motion for reconsideration, in which it substantially reduced its indemnification request, to extend only

to acts other than negligence, gross negligence or willful misconduct.[4]

■ The Court notes that neither the attorneys nor the accountants appointed as professionals in this case have requested a similar indemnification. Indeed, ethics

action, suit or proceeding (including any investigation) commenced or threatened, or any claim whatsoever, or in appearing or preparing for appearance as a witness in any action, suit or proceeding (including any investigation or partial proceeding such as a deposition) to which, jointly or severally, any Indemnified Person may become subject, directly or indirectly, arising out of, in connection with or based upon this engagement, the transactions contemplated hereby or any Indemnified Person's role in connection with any of the foregoing. Notwithstanding the foregoing, the Company shall not be liable in respect of any claim, damage, loss, liability, cost or expense in respect of any Indemnified Person to the extent the same resulted from the gross negligence or willful misconduct of such Indemnified Person. The Company also agrees, upon demand by an Indemnified Person at any time, from time to time, promptly to reimburse such Indemnified Person for costs and expenses to which the Company has agreed to indemnify such Indemnified Person pursuant to this Agreement.

b. If for any reason the foregoing indemnification is unavailable to any Indemnified Person or insufficient to hold an Indemnified Person harmless, then the Company shall contribute to the amount paid or payable by the Indemnified Person as a result of claim, damage, loss, liability, cost or expense in such proportion as is appropriate to reflect the relative benefits received by the Company and its affiliates, on the one hand, and Dean Witter, on the other hand, as well as other relevant equitable considerations; provided, however, that the provisions of this paragraph 5 notwithstanding, the aggregate contribution from all Indemnified Persons for all claims, losses, damages, liabilities, costs and expenses shall not exceed the amount of fees actually received by Dean Witter pursuant to paragraph 2 of this Agreement.

c. It is agreed that Dean Witter may select its own counsel in connection with all matters referred to in this paragraph 5, but in no event shall the Company be responsible for fees and expenses of more than one firm of counsel (in addition to any required local counsel) at any time in connection with any action or proceeding or separate but substantially similar or related actions or proceedings in the same jurisdiction arising out of the same general allegations or proceedings. The indemnity, contribution and ex-

pense reimbursement obligations that the Company has under this paragraph 5 are not in lieu of but in addition to any rights which any Indemnified Person, or any obligations that the Company or any other person may otherwise have.

4. The indemnity provision now requested by Dean Witter is as follows:

If Dean Witter becomes involved in any capacity in any action, proceding or investigation in connection with any matter referred to in this Agreement, the estate periodically shall reimburse Dean Witter for its reasonable legal fees and expenses incurred in connection therewith. Such fees and expenses shall only be reimbursed by the estate upon an Order of the Bankruptcy Court after application and hearing, and the attorneys' fees and expenses for which it seeks reimbursement shall be proved and documented as if its attorneys were applying for compensation in accordance with the Bankruptcy Code, Rules, United States Trustee Guidelines, and the orders applying to payment of attorneys fees and expenses in this case. The estate also shall indemnify Dean Witter against any losses, claims, damages or liabilities to which Dean Witter may become subject in connection with any matter referred to in this Agreement, except to the extent that any such loss, claim, damage or liability results primarily from the negligence, gross negligence or willful misconduct of Dean Witter in performing services hereunder. If for any reason the foregoing indemnification is unavailable to Dean Witter or insufficient to hold it harmless, then the estate shall contribute to the amount paid or payable by Dean Witter as a result of such loss, claim, damage or liability in such proportion as is appropriate to reflect the relative benefits received by both the estate and Dean Witter, and the relative fault of the estate and Dean Witter as well as any relevent equitable considerations. The reimbursement, indemnity and contribution obligations of the estate under this paragraph shall be in addition to any liability which the estate may otherwise have, shall extend to any affiliate of Dean Witter and the directors, employees and controlling persons (if any) of Dean Witter, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the estate, Dean Witter, any such affiliate and any such person. The foregoing provisions shall survive any termination of this Agreement.

rules prohibit an attorney from obtaining an indemnity from a client in connection with professional services. California Rules of Professional Conduct Rule 3–400(A); Model Rules of Professional Conduct Rule 1.8(h); Model Code of Professional Responsibility DR 6–102.[5]

Bankruptcy Code § 328(a) governs the terms and conditions of appointment of professional persons in a bankruptcy case. This section authorizes such employment "on any reasonable terms and conditions ... including on a retainer, on an hourly basis, or on a contingent fee basis."[6] The question under this statutory provision is whether an indemnity provision of the sort requested is reasonable.

There is apparently only one reported opinion on the subject of the indemnification of investment advisors. In *In re Allegheny International, Inc.*, 100 B.R. 244 (Bankr.W.D.Pa.1989), the court initially had approved the debtor's retention of Smith Barney, Harris Upham & Co. with an indemnity provision that covered all losses except these arising from the gross negligence or willful misconduct of the investment advisor. The court had also required a similar indemnity for Rothschild, Inc., the investment advisor for the creditors committee. On the court's sua sponte order to show cause it modified the indemnity provisions to deny indemnity additionally for negligence or for breach of the investment advisors' fiduciary duties to their respective clients. *See also In re Glosser Bros., Inc.*, 102 B.R. 38, 42 (Bankr.W.D.Pa.1989) (limited indemnity provision for investment advisor criticized).

The Court does not consider the outcome in *Allegheny* to be determinitive in this case. In *Allegheny* the court allowed a very limited indemnity because it considered it inequitable to eliminate the indemnity altogether after having initially approved a very broad indemnity provision. In this case, in contrast, the Court initially prohibited any indemnity provision whatever in the appointment of the investment advisors. The reasoning in *Allegheny*, however, is instructive.

The court in *Allegheny* found that investment advisors are fiduciaries, who have obligations of fidelity, undivided loyalty and impartial service in the interest of their clients. *Id.*, at 246. The court found it improper to indemnify them for negligence or for violation of these fiduciary duties. *Id.*, at 246–47.

In addition to citing *Allegheny*, debtor relies upon two legal and one practical argument. In its first legal argument debtor calls the Court's attention to twelve bankruptcy cases where indemnity clauses for investment bankers have been approved in unreported decisions. The Court notes that debtor has been selective in its presentation of such decisions: in *Allegheny* the court refers to four unreported decisions, none of which is cited by the debtor, that have imposed stringent standards on investment advisors. *See id.*

■ The Court is not persuaded by this type of authority. Unreported bankruptcy court decisions have very little weight as precedent. When a bankruptcy judge wants a decision to serve as precedent, the judge publishes the decision. Unpublished decisions do not establish case law, and do not serve as precedent.

For its second legal argument, debtor argues that Bankruptcy Code §§ 328(a) and 330(a) authorize such provisions. The Court finds this statutory authority equally unpersuasive. Section 328(a), as pointed out supra, authorizes a condition of employment only if it is reasonable.

■ Debtor has offered no evidence of the reasonableness of the proposed indemnity provision, either in its original or in its amended form. The reason for hiring a professional person is that the person has

---

**5.** The Model Rules of Professional Conduct or the Model Code of Professional Responsibility has been adopted, mostly with minor variations, in every state in the United States except California. *See* ABA/BNA Lawyers' Manual on Professional Conduct ¶ 01:3 (1990). California has its own set of rules that differ quite substantially from both American Bar Association model formulations.

**6.** 11 U.S.C.A. § 328(a) (West Supp.1990).

special expertise that is beneficial to the debtor or the committee. The Court expects that such professionals would be especially diligent in making sure that they meet the standard of care for exercising their expertise in their work in the case. Indemnification is not consistent with professionalism. *Allegheny.*, at 246.

 Debtor argues that Bankruptcy Code § 330(a)(1) requires the Court to consider the usual terms of employment outside of bankruptcy in determining the compensation of professionals in a bankruptcy case. Section 330 authorizes compensation for those professional persons employed under section 327, and limits such compensation to "reasonable compensation for actual, necessary services", based on "the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title". Debtor argues that an indemnification is a part of the cost of comparable services for investment advisors outside of bankruptcy cases, and thus is a reasonable and proper term of employment for an investment advisor in a bankruptcy case.

The Court does not find this argument persuasive. The Court finds that the "compensation" referred to in section 330 is to be provided in money or money's worth. An indemnification provision, the Court holds, does not fall within the scope of this statutory language.

 There is a further reason why indemnification should not be part of the agreement with a professional at the outset of a case. Whether the debtor's estate should indemnify a professional for a claim against the professional arising out of the case should be determined by the Court after the facts giving rise to the claim are known. Whether indemnification should be offered to a professional should be determined on a case by case basis, after the claim has been asserted for which indemnity is sought. In fact, it is questionable whether blanket indemnity at the outset of a case is even legitimate as a matter of contract law outside of a bankruptcy case.

 Debtor's practical argument is that Dean Witter has a management policy that it will not accept employment as an investment advisor without an indemnity agreement. It states that it will have to withdraw from the case if it is not granted some indemnity protection, at least of the sort requested in the motion for reconsideration, and that such withdrawal will cause great harm to the debtor.

The Court does not consider this a legitimate ground for authorizing an indemnity provision. The terms and conditions of employment for professionals at the expense of a bankruptcy estate are determined by the bankruptcy court, within the limits set by the Bankruptcy Code and case law. Dean Witter may decide that it does not want to do bankruptcy work. If it does want to do bankruptcy work, it must live with the terms of employment as authorized by the court in which the case is pending. Furthermore, Dean Witter may not withdraw without Court approval, which could be denied at this point in the case.

Debtor argues that the revised indemnity provision now proposed is virtually the same as that provided by the common law absent an indemnity agreement, and that what is now requested is quite harmless. Counsel for the creditors committee speculates that Dean Witter is principally interested in receiving a defense at the expense of the estate if a lawsuit is brought against it in consequence of its services for the debtor.

Neither the debtor nor any other party has briefed the issue of the coverage of common law indemnity for an agent. The Court notes that California law, for example, provides a certain level of indemnity for an agent: "The principal must indemnify his agent for expenditures or losses incurred in discharge of his authorized duties." 2 B. Witkin, Summary of California Law 72 (9th ed. 1987).

If the indemnity provision that Dean Witter now proposes is the same as what the common law provides, the Court does not need to approve it: it is an idle act for the Court to grant rights that already exist

absent a court order. However, it appears to the Court that Dean Witter is still requesting an indemnity that is both broader than that available under California law and that conflicts with what the court authorized in *Allegheny*. The court in *Allegheny* prohibited any indemnification for breach of fiduciary duty by an investment advisor, but Dean Witter does not propose to eliminate this from its indemnity provision.

The Court finds that neither the debtor nor Dean Witter has shown that the revised proposed indemnity provision (or any other indemnity provision) is reasonable, or that it should be authorized by the Court on any other grounds.

### B. *Bonuses*

Like indemnity provisions, section 328(a) limits the right to a bonus.

### 1. Sign-on Bonus

■ Dean Witter proposes a sign-on bonus of $75,000 in this case, in addition to its other compensation ($75,000 per month plus a $450,000 bonus upon confirmation of a plan of reorganization).

No showing has been made that a sign-on bonus is reasonable in this case. It is not the custom of this Court to authorize sign-on bonuses for professionals. The Court does not find the sign-on bonus to be reasonable in this case, and it is not authorized.

### 2. Plan Confirmation Bonus

■ Asian Oceanic requests authorization for a bonus in the amount of $350,-000 if the Court confirms a plan of reorganization in this case. Dean Witter requests a bonus in the amount of $450,000 upon the confirmation of a plan.

Bankruptcy Code §§ 328 and 330 authorize "reasonable compensation" for professionals employed under section 327. Such compensation must be based upon "the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a [bankruptcy] case...."[7]

The Court has no information on any of these factors at this point in the case. Indeed, except for the cost of comparable services, all of these factors depend on events that will take place in the future. Thus it is impossible for the Court to determine whether a bonus is earned until the services are performed and are found to qualify for a bonus under the statutory standards.[8]

The Court does not consider it improper for a professional to ask for a bonus in an appropriate case, or for a court to award a bonus based upon a showing that it has been earned. However, such a determination must await the writing of a success story in this case, and a showing that a professional seeking a bonus has earned it. Thus no bonus upon confirmation of a plan can be authorized at this time.

### C. *Timekeeping*

■ The Court is aware that it is not the customary practice of financial advisors such as Dean Witter and Asian Oceanic to keep time records in the fashion required for professionals appointed under Bankruptcy Code § 327.[9] Bankruptcy Rule 2016 provides: "An entity seeking interim or final compensation for services ... from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, [and] time expended...."

Local rule requires that a fee application (whether interim or final) include the following information:

A detailed listing of all time spent by the professional on matters for which compensation is sought, including the following:

A. *Date service was rendered.*

B. *Description of service.* It is not sufficient to merely state "Research",

---

7. 11 U.S.C.A. § 330(a)(1) (West Supp.1990).

8. James T. Moran, chair of the creditors committee, states that Asian Oceanic is aware of this requirement, and is not requesting consideration of a possible bonus at variance with this procedure.

9. 11 U.S.C.A. § 327 (West 1979 & Supp.1990).

"Telephone Call", "Court Appearance", etc. Reference must be made to the particular persons, motions, discrete tasks performed and other matters related to such service. Summaries that list a number of services under only one time period will generally not be satisfactory.

C. *Amount of time spent.* Summaries are not adequate. Time spent is to be accounted for in tenths of an hour and is generally to be broken down in detail by the specific task performed. Lumping services together is generally not satisfactory.

D. *Designation of the particular person who rendered the service.* If more than one person's services are included in the application, specify which person performed each item of service.

Local Rule 141(3)(a)(v) (emphasis in original). *See also* United States Trustee Guideline No. 7, Central District of California, *reprinted in* 18 Cal.Bankr.J. 135, 146 (1990); *see generally* Collier Bankruptcy Compensation Guide ¶ 4.05 (S. Bernstein ed. 1988).

Asian Oceanic proposes to charge only for actual hours worked on the case, pursuant to its hourly billing rates. Presumably it plans to comply with the foregoing guidelines, as well. The Court notes that Asian Oceanic is not requesting a flat monthly fee for services,[10] and presumably it will be compensated only after the approval of fee applications pursuant to Bankruptcy Code §§ 330 [11] and 331.[12]

In contrast, the debtor proposes to pay Dean Witter a monthly fee of $75,000, without any further Court review except upon a final fee application. Dean Witter proposes to be paid on an interim basis without making any showing, prior to its final fee application, as to what services it has performed, or even whether it has performed any services during a month for which it is to be paid.

While the Court does not hold that a flat monthly payment of $75,000 is never permissible, the Court finds that the debtor has not justified such a payment in this case. Accordingly, Dean Witter must follow the same procedure and timing requirements as Asian Oceanic (and all other professionals) for interim and final compensation in this case. Interim and final compensation are allowable only after application pursuant to Bankruptcy Code §§ 330 and 331, and subject to the standards of these statutory provisions and the local rules.

D. *Hiring Further Professionals*

Dean Witter also proposes to obtain authority to hire further professionals at the debtor's expense in two possible contexts. First, it proposes that it be authorized to retain Salomon Brothers Inc. ("Salomon") to syndicate and place a commercial bank financing. This proposal is not mentioned in its application for employment, but appears in paragraph 13 of its letter agreement (which was not attached to the application, but was only filed subsequently). Second, Dean Witter proposes to have the Court authorize it to hire counsel at the debtor's expense as part of the indemnity provision.

Neither of these proposals is approved by the Court. The indemnity provision is disapproved in its entirety supra. If the debtor wants to hire Salomon for a commercial bank financing, it should make a separate application to the Court for Salomon's appointment.

## IV. CONCLUSION

For the foregoing reasons the Court qualifies its approval of the employment of Dean Witter and Asian Oceanic in the following respects. First, no indemnity is authorized for either of these professionals (or for any other whose employment is authorized by the Court in this case). Second, Dean Witter and Asian Oceanic (and any other professional) are entitled to the payment of a bonus only after successful

---

**10.** The Court assumes that Asian Oceanic did not volunteer for this arrangement, but that it resulted from bargaining by the creditors committee with Asian Oceanic.

**11.** 11 U.S.C.A. § 330 (West Supp.1990).

**12.** 11 U.S.C.A. § 331 (West 1979).

**634**

conclusion of this case, and only upon a showing that the professional has made a distinctive contribution to the case that merits a bonus over the normal hourly rate. Third, each professional must keep detailed time records according to the standards in United States Trustee Guideline No. 7. Fourth, the Court denies permission to hire further professionals without further order of the Court.

This opinion supplements this Court's orders authorizing the employment of Dean Witter as a financial advisor for the debtor and Asian Oceanic as a financial advisor for the creditors committee.