In re JOAN AND DAVID HALPERN INCORPORATED, Debtor.

No. 00–10961(SMB).

United States Bankruptcy Court, S.D. New York.

April 4, 2000.

Togut, Segal & Segal (Albert Togut, Frank A. Oswald, of counsel), New York City, for Debtor.

Hahn & Hessen (Mark T. Power, of counsel), New York City, for Official Committee of Unsecured Creditors.

Dewey Ballantine (Stuart Hirshfield, of counsel),New York City, for Newmark Retail Financial Advisors LLC.

United States Trustee (Wendy Rosenthal, of counsel), New York City.

## MEMORANDUM DECISION REGARDING AGREEMENT TO INDEMNIFY DEBTOR'S FINANCIAL ADVISORS

STUART M. BERNSTEIN, Chief Judge.

The debtor has applied pursuant to 11 U.S.C. § 327(a) to retain Newmark Retail Financial Advisors LLC ("Newmark") as its financial advisor. The retention agreement contains a provision obligating the debtor to indemnify Newmark for liability relating to its engagement excluding only liability based on bad faith, gross negligence or willful misconduct. The United States Trustee objected, *inter alia,* to the indemnity clause. At the hearing held on March 30, 2000, I overruled her objections, and authorized the retention. This memorandum explains in greater detail the reasons for overruling the United States Trustee's objection to the indemnity provision.

## BACKGROUND

The debtor is engaged in the business of selling luxury women's footwear, apparel and accessories. It operates from sixty-seven retail boutiques, shops-in-shops in major department stores and outlets. Two of the debtor's non-debtor wholly-owned subsidiaries operate similar businesses outside of the United States.

After filing this chapter 11 case, the debtor applied to retain several professionals and consultants, including Newmark. Under the parties' retention agreement (the "Letter Agreement"), Newark will provide investment advisory, consulting and real estate brokerage services, negotiate for debtor-in-possession financing, and negotiate for the sale of the debtor's inventory. The debtor proposes to pay a monthly advisory fee of $65,000.00. In addition, the debtor will pay a separate success fee based upon a percentage of the refinancing of the existing debt, the disposition or achievement of certain values relating to the debtor's numerous leaseholds, and the sale of the debtor's inventory. The success fee will reduce (*i.e.,* be charged against) the monthly advisory fee, up to $40,000.00 per month, and the aggregate monthly fee is capped.

The Letter Agreement also contains the aforementioned indemnity clause. The debtor must indemnify Newmark[1] for losses, claims, damages, expenses and liabilities (including reasonable attorney's fees) incurred in connection with the services for which it is retained. There is no indemnity obligation if a court of competent jurisdiction determines that the losses, *etc.* "primarily resulted from the bad faith, gross negligence or willful misconduct" of Newmark.

The United States Trustee interposed several objections to the proposed Newmark retention, including the indemnity provision. Her main position is that indemnity is *per se* improper. At oral argument, she contended that even if indemnity is not impermissible *per se,* indemnity for acts of ordinary negligence is never allowed. After its appointment, the Official Committee of Unsecured Creditors (the "Committee") became involved, and rene-

1. The indemnity also runs in favor of Newmark's affiliates and the shareholders, members, managing members, partners, owners, employees, officers, directors, consultants and agents of Newmark and its affiliates.

gotiated several of the terms of the Letter Agreement with Newmark. As revised, Newmark reduced its success fees and monthly fee cap and made other changes, but no change was made to the indemnity provision. The Committee supports the debtor's application to retain Newmark under the terms of the modified Letter Agreement.

## DISCUSSION

The debtor may, subject to court order, retain a professional who is disinterested and does not hold or represent an interest that is adverse to the estate. 11 U.S.C. § 327(a). Further, the trustee may employ the professional "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). The Bankruptcy Code does not expressly permit or forbid an agreement to indemnify the investment banker.

Nevertheless, several cases cited by the United States Trustee reject or limit indemnity provisions. For example, in *In re Allegheny Int'l, Inc.*, 100 B.R. 244 (Bankr. W.D.Pa.1989), the court initially approved the retention of financial advisers under agreements that indemnified them for liability, excluding only liability based on gross negligence or willful misconduct. The court *sua sponte* reconsidered the retention order, and further limited the indemnity by excluding ordinary negligence as well. It noted that retentions of the same financial advisors in other cases excluded ordinary negligence, *id.* at 246, "[i]ndemnification and professionalism are not entirely consistent," *id.*, and "holding a fiduciary harmless for its own negligence is shockingly inconsistent with the strict standard of conduct for fiduciaries." *Id.* at 247.

*Allegheny* was followed in *In re Mortgage & Realty Trust*, 123 B.R. 626 (Bankr. C.D.Cal.1991). There, the court refused to approve any indemnity provision. The debtor had failed to offer evidence of the reasonableness of the proposed provision, and the court agreed with *Allegheny* that indemnification is inconsistent with professionalism. *Id.* at 630–31. Finally, the court observed that the propriety of indemnification could not be determined until the claim arose, questioning whether a contract of indemnity is legitimate under general principles of contract law. *Id.* at 631; *accord In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13, 27 (Bankr. S.D.N.Y.1991) (basing its refusal to approve an indemnity provision on its agreement with the *Mortgage & Realty Trust* court).

The next case to consider indemnity provisions was *In re Gillett Holdings, Inc.*, 137 B.R. 452 (Bankr.D.Colo.1991). There, as in *Allegheny*, the indemnity provision did not exclude ordinary negligence. Observing that indemnity clauses were not *per se* impermissible, the court nevertheless agreed with *Allegheny* that fiduciaries should not be permitted to shield themselves from the responsibility for their own negligence. *Id.* at 458. In addition, the retention agreement attempted to limit the financial advisor's liability to the disgorgement of the fees previously received. *Id.* at 459 n. 17; *accord In re Glosser Bros., Inc.*, 102 B.R. 38, 42 (Bankr.W.D.Pa.1989) (refusing to approve an indemnification provision that excluded only willful misconduct and gross negligence, and limited liability to the amount of fees paid).

The principle driving the results in these cases is the presumed inability of a fiduciary to limit his liability for ordinary negligence. This "principle," however, is contrary to the common law of trusts to which we may look for guidance. *See United States Trustee v. Bloom (In re Palm Coast, Matanza Shores Ltd. Partnership)*, 101 F.3d 253, 257–58 (2d Cir. 1996). A trust agreement may exonerate a trustee for liability except in the case of breach of trust, bad faith or intentional or reckless indifference to the interest of the beneficiary. Restatement (Second) of Trusts § 222 (1959). Similarly, the trust agreement may provide for indemnity to

the same extent and subject to the same limitations. *Id.*, § 247 cmt. h. Thus, it is well settled that the trustee of an *inter vivos* trust may be exonerated or indemnified with respect to his acts of ordinary negligence.[2] *See, e.g., Stark v. United States Trust Co.*, 445 F.Supp. 670, 683 (S.D.N.Y.1978) (Weinfeld, J.) (New York law recognizes exoneration provisions in *inter vivos* trusts that protect the trustee from liability absent recklessness, fraud or intentional wrongdoing); *Morrissey v. Curran*, 351 F.Supp. 775, 782 (S.D.N.Y. 1972) (trust exoneration provisions excluding willful misconduct do not relieve the trustee of liability for breach of trust constituting a willful violation of duty, bad faith or reckless indifference but will protect the trustee against liability for negligence), *aff'd*, 483 F.2d 480 (2d Cir.1973), *cert. denied*, 414 U.S. 1128, 94 S.Ct. 865, 38 L.Ed.2d 752 (1974); *Jones v. First Nat'l Bank of Ft. Lauderdale*, 226 So.2d 834, 835 (Fla.Dist.Ct.App.1969) ("a trust agreement may contain exculpatory provisions whereby a trustee may, at least in circumstances involving ordinary negligence and honest errors of judgment, be relieved of liability for breach of trust"); *Jarvis v. Boatmen's Nat'l Bank of St. Louis*, 478 S.W.2d 266, 274 (Mo.1972) (exculpatory clause that limited testamentary trustee's liability to acts involving willful default was valid and not contrary to public policy);[3] *In re Cowles' Will*, 22 A.D.2d 365, 255 N.Y.S.2d 160, 174 (1965) (enforcing clause in trust agreement exonerating trustee except for willful negligence, self-dealing and bad faith), *aff'd*, 17 N.Y.2d 567, 268 N.Y.S.2d 327, 215 N.E.2d 509 (1966)

The statutory provisions governing the indemnification of corporate fiduciaries follow similar principles. Under Delaware law, a corporation may indemnify an officer or director from liability provided he acted in good faith and in the reasonable belief that his actions were in or not opposed to the best interests of the corporation. Del.Code Ann., tit. 8, § 145(a) (1998). New York law is similar. *See* N.Y.Bus. Corp. Law § 722 (McKinney 1986). Further, a New York corporation may provide for broader indemnity limited only by liability based on bad faith, active or deliberate dishonesty or self-dealing. *Id.*, § 721. Liability for negligence is rare given the business judgment rule, but it is still possible, *see* 3A James Solhein & Kenneth Elkins, Fletcher Cyclopedia of Private Corporations § 1031, at 16–17 (1994 rev. ed.), and the corporation may, under the statutory provisions cited, indemnify the corporate fiduciary.

Returning to the realm of bankruptcy, there is no blanket prohibition, as the United States Trustee argues, against an indemnity clause in a financial advisor retention. Even the cases discussed above contradict this broad proposition. *See Gillett Holdings*, 137 B.R. at 458–59 (declining to rule that indemnity provisions are *per se* unacceptable and concluding that they must be analyzed on a case-by-case basis); *Allegheny*, 100 B.R. at 246 (permitting limited indemnity). Further, clauses exonerating or indemnifying a financial advisor for liability based on negligence are not impermissible *per se*. While the reactions of the courts in the few reported decisions are understandable, they are also visceral. They overlook the common law principles permitting indemnity of fiduciaries, and the idea that a fiduciary cannot be indemnified for negligence, or that such indemnification is contrary to public policy, is just plain wrong. The common law has carved out clear exceptions to indemnity, such as bad faith, breach of trust, dishon-

2. The trustee of testamentary trusts cannot be exonerated for his negligent acts. N.Y.Est. Powers & Trusts Law § 11–1.7 (McKinney 1999). This prohibition does not extend beyond testamentary trusts. 106 N.Y.Jur.2d, *Trusts* § 354 (1993)

3. *Jarvis's* reference to the contrary New York law relates to the limited ruled, discussed in the preceding footnote, that a testamentary trustee cannot be exonerated for negligent acts.

esty, self-dealing, and willful, reckless or grossly negligent misconduct, leaving the rest to the parties' agreement. In the context of this case, therefore, the appropriate inquiry is whether taken as a whole, the terms of the retention are fair and reasonable, and the retention is in the bests interest of the estate.

It is hard to quarrel with the notion that the debtor needs the services of a qualified investment advisor. Its application to retain Newmark recounts the debtor's financial and operational woes. (*See Application for Order Authorizing the Debtor to Retain Newmark Retail Financial Advisors LLC,* dated Mar. 9, 2000, at ¶¶ 13–15.) The debtor filed this case to eliminate unprofitable operations, refocus on its profitable business, and liquidate excess inventory. (*Id.,* ¶ 17.) Newmark brings much to the table. It has extensive experience rendering restructuring advice, including advice regarding the possible disposition of leasehold assets. (*See id.,* ¶ 19.) The latter is particularly important because, in many ways, this case is typical of a large retail case. The debtor is a party to over fifty leases. Section 365 of the Bankruptcy Code permits the debtor to shed unprofitable leases through rejection, and sell below market leases that it does not need through assumption and assignment. The retention of Newmark avoids the necessity of retaining a separate real estate broker or professional.

Indeed, no one, including the United States Trustee, has questioned the debtor's need for Newmark's services or Newmark's ability to render them. Instead, the dispute has focused on the hypothetical possibility that the debtor may be called upon, at a time in the future, to indemnify Newmark for a negligent act. After the Committee was appointed, it actively participated in renegotiating several aspects of the retention. As a result, Newmark agreed to reduce its fees. The Committee and Newmark did not, however, renegotiate the indemnity provisions to exclude negligence (or anything else) because, as Committee counsel explained at the hearing, the indemnification provisions in the Letter Agreement are customary and usual. *See* 3 Lawrence P. King et al., Collier on Bankruptcy ¶ 328.02[1][g], at 328–18 (15th rev. ed.1999) (the retention terms for financial advisors differ from other professionals, reflecting the compensation structure available in nonbankruptcy cases). The Committee's support is entitled to weight. After all, it is the creditors' money that is placed at risk by the indemnity provision. The debtor also supports it. In fact, the only party that does not support it—the United States Trustee—is the only party that has no financial stake in it.

Viewing the modified Letter Agreement as a whole, I conclude that its terms are fair and reasonable, and that the retention of Newmark is in the best interest of the estate. This does not mean that every similar agreement will pass muster, or that every similar retention will satisfy the best interest criteria. Moreover, as I stated on the record, while the indemnity may cover ordinary negligence, it may not include bad faith, breach of fiduciary duty (other than ordinary negligence), breach of trust, self-dealing, willful or reckless misconduct or gross negligence. While the parties seem to agree that liability based on these types of conduct is excluded from the indemnity clause, it should be made explicit. The United States Trustee's remaining objections are overruled for the reasons stated on the record.