In re **BALTIMORE EMERGENCY SERVICES II, LLC; Phyamerica Physician Group Inc.; ECS Holdings, Inc.; Scott Medical Group, LLC; et al., Debtors.**

Nos. 02–6–7576–SD to 02–6–7815–SD.

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

March 6, 2003.

Paul M. Nussbaum and Martin T. Fletcher, Whiteford, Taylor & Preston, LLP, Baltimore, MD; Thomas E. Lauria, White & Case, LLP, Miami, FL, for debtor.

Joel I. Sher, Shapiro Sher Guinot & Sandler, Baltimore, MD, for creditors committee.

Mark A. Neal, Baltimore, MD, for U.S. trustee.

*MEMORANDUM OPINION APPROVING LIMITED INDEMNIFICATION OF DEBTORS' FINANCIAL ADVISORS*

E. STEPHEN DERBY, Bankruptcy Judge.

The Application of Debtors to retain Evercore Restructuring L.P. as Debtors' financial advisor raises the issue of what, if any, indemnification of a financial advisor by a Chapter 11 debtor is a reasonable term of employment.

Most reported opinions that have considered the issue to date have found or assumed that such indemnification provisions are not unreasonable *per se,* but have not found them reasonable on the facts of the particular employment. *See In re Metricom, Inc.,* 275 B.R. 364 (Bankr.N.D.Cal. 2002); *In re Thermadyne Holdings Corp.,* 283 B.R. 749 (8th Cir. BAP 2002); *In re Gillett Holdings, Inc.,* 137 B.R. 452 (Bankr.D.Colo.1991); *In re Mortgage & Realty Trust,* 123 B.R. 626, 631 (Bankr. C.D.Cal.1991); *but see In re Joan and David Halpern, Inc.,* 248 B.R. 43 (Bankr. S.D.N.Y.2000), *aff'd,* 2000 WL 1800690, 2000 U.S. Dist. Lexis 17589 (S.D.N.Y. Dec. 6, 2000).

In the recent case of *United Artists Theatre Co. v. Walton,* 315 F.3d 217 (3rd Cir.2003), the United States Court of Appeals for the Third Circuit became the first circuit court to address the issue. The court affirmed a Chapter 11 debtor's retention of its financial advisor under terms that indemnified the financial advisor from its own negligence. In so doing, however, the court defined limits to the reasonableness of such indemnification provisions.

■ The indemnification of a financial advisor to a Chapter 11 debtor is not, per se, an unreasonable term of employment under 11 U.S.C. § 328(a). Such provisions

may be expected in the market, and reorganizing debtors should not be denied the opportunity to retain a financial advisor on marketplace terms that are reasonable. As pointed out in *United Artists,* however, although the standard of reasonableness may be market driven, it is not market determined. *United Artists,* 315 F.3d at 230.

A financial advisor to a reorganizing debtor should not be artificially constrained from giving its best financial advice by a fear of liability for being second-guessed. Decisions in a reorganization case often must be made in dynamic and fluid situations, under time pressures, and with only the best information then available. In these circumstances, the estate is most likely to benefit from financial advice that is not artificially constrained by a fear of being sued.

As discussed in *United Artists,* it may be reasonable to indemnify a reorganizing debtor's financial advisor from something commonly described as ordinary negligence, without tolerating actions akin to gross negligence, by focusing on the process used to reach decisions rather than on the results achieved. *Id.* at 230–33. In so doing, the *United Artists* court applied principles that closely equate to what is commonly known in corporate law as the business judgment rule.

■ Testing the reasonableness of an indemnity provision for a financial advisor to a reorganizing debtor by principles akin to the business judgment rule makes sense. It provides needed flexibility, and it provides important safeguards. *United Artists,* 315 F.3d at 230–33. First, the financial advisor would be culpable for a breach of its duty of loyalty, which includes conflicts of interest and nondisinterestedness. See *id.* at 233. Such a breach by financial consultants was alleged, *inter alia,* in the *Merry–Go Round Enterprises,*

*Inc.* case that spurred the heightened interest by bankruptcy financial advisors in indemnity protection. *See Merry–Go Round Enterprises, Inc.,* 244 B.R. 327 (Bankr.D.Md.2000) (addressing legal fees for representation of Chapter 7 trustee in suit against debtor's former restructuring accountant for violation of duty of loyalty; the suit settled for $185 million on eve of trial). Second, the financial advisor would be culpable for a breach of the duty of care in the process by which it rendered advice to the reorganizing debtor. *See United Artists,* 315 F.3d at 233. Third, an indemnification would not cover contractual disputes with the debtor, including disputes over the services the financial advisor has agreed to perform. As stated in *United Artists,* "To the extent that [the financial advisor] seeks indemnity for a contractual dispute in which the Debtors allege the breach of [the financial advisor's] contractual obligations, this is hardly an indemnity-eligible activity." *Id.* at 234. Fourth, limiting words, such as "solely," that would expand a reorganizing debtor's indemnification obligation are "out of bounds for acceptable public policy." *Id.*

■ With these principles in mind, it is necessary to evaluate the indemnity agreement proposed by Evercore. As initially proposed in the application, the operative language of the indemnity provision read as follows:

In consideration of your agreement to act on our behalf in connection with such matters, we agree to indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Party") from and against *any losses, claims, damages, expenses and liabili-*

*ties whatsoever,* whether they be joint or several, related to, arising out of or in connection with the engagement (the "Engagement") under the Engagement Letter and will reimburse each Indemnified Party for all expenses (including reasonable fees, expenses, and disbursements of counsel) as they are incurred in connection with investigation, preparing, pursuing, defending or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement or this agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us. We will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have *primarily* resulted from the bad faith, gross negligence or willful misconduct of Evercore. We also agree that no Indemnified Party shall have any liability (whether direct or indirect, *in contract* or tort or otherwise) to us or our owners, parents, affiliates, security holders or creditors for or in connection with the Engagement *except* for any such liability for losses, claims, damages or liabilities incurred by us that are finally judicially determined by a court of competent jurisdiction to have *primarily* resulted from the bad faith, gross negligence or willful misconduct of Evercore.

(Emphasis added).

The U.S. Trustee objected to this indemnification, but the U.S. Trustee has resolved its objections by an agreement to include several provisions in an agreed form of order approving Evercore's retention. One of the provisions included to resolve the objections of the U.S. Trustee provides as follows:

> (b) notwithstanding any provision of the Evercore Agreement to the contrary, the Debtors shall have no obligation to indemnify Evercore, or provide contribution or reimbursement to Evercore, for any claim or expense that is either (a) judicially determined (the determination having become final) to have arisen *solely* from Evercore's *gross negligence or willful misconduct,* or (b) settled prior to a judicial determination as to Evercore's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which Evercore should not receive indemnity, contribution or reimbursement under the terms of the Evercore Agreement, as modified herein;

(Emphasis added).

This provision negotiated with the U.S. Trustee, however, does not go far enough to satisfy the reasonableness standard for an indemnity provision as articulated in the *United Artists* opinion. First, whether the word is "solely," as in the proposed order, or "primarily," as in Evercore's indemnification agreement, it has no place in limiting the exclusion from the indemnification agreement of claims for gross negligence.

Second, Evercore's indemnification agreement excludes from the indemnification obligation claims for bad faith, gross negligence or wilful misconduct. The provision in the proposed order, however, eliminates the exclusion for bad faith. This would constitute an unacceptable expansion of the Debtors' indemnification obligation beyond that initially requested and beyond acceptable bounds of public policy.

Third, Evercore's indemnification agreement is worded so broadly as arguably to require indemnification for contractual disputes with the Debtors. Contractual disputes need to be expressly excluded from the scope of the indemnification agreement. Further, the terms of the engagement agreement are unclear. The financial advisory services to be rendered by Evercore under the agreement include:

(a) Assist in the evaluation of [Debtors'] businesses and prospects; (b) Assist in the development of [Debtors'] long-term business plan ...; ... (d) ... evaluate alternatives to improve [Debtors' financial] liquidity; (e) Analyze various restructuring scenarios and the potential impact of these scenarios ...; (f) Provide strategic advice with regard to restructuring or refinancing ...; [and] (g) Evaluate [Debtors'] debt capacity and alternative capital structures ....

This list of financial advisory services, however, is followed by a disclaimer that seems to undercut what Evercore has agreed to do. The disclaimer provides: "... Evercore shall have no responsibility for designing ... any initiatives to improve [Debtors'] operating profitability, cash management or liquidity ...." It is not acceptable for Evercore to disclaim responsibility for financial advisory services it has agreed to provide, and this disclaimer shall not be read to permit such an avoidance of responsibility.

Fourth, there is no affirmative recognition that the indemnity provision does not cover breaches by Evercore of its duties of loyalty, including the avoidance of conflicts of interest and its obligation to be disinterested, and of care. Because of the breadth of the wording in Evercore's indemnity agreement, an order approving Evercore's retention should expressly recognize that any breach of these duties is not covered by the indemnity agreement.

■ One last caveat is required. As stated, the reasonableness of an indemnification provision for Debtors is market driven, but not market determined. A factual record to support findings that a particular indemnification provision is necessary as well as reasonable for a debtor's reorganization is normally required. Here, the U.S. Trustee, the Official Committee of Unsecured Creditors and the Debtors have assumed the market driven necessity for some form of indemnification provision for Evercore in the positions they have taken on the application to retain Evercore as Debtors' financial advisor. The court will accept the parties' position for purposes of this ruling on the reasonableness of the proposed indemnification.

With the modifications and clarifications discussed above, for the reasons stated, retention of Evercore Restructuring L.P. as Debtors' financial advisor, with an indemnification agreement, will be approved.