**In re NIOVER BAGELS, INC., d/b/a The Ultimate Bagel Cafe, Debtor.**

**Bankruptcy No. 897–85104–288.**

United States Bankruptcy Court, E.D. New York.

Nov. 4, 1997.

Stephen P. Gelfand, Zinker & Gelfand, Smithtown, NY, for Debtor.

Carolyn S. Schwartz, United States Trustee by Stan Yang, Garden City, NY, Attorney–Advisor.

## MEMORANDUM OPINION APPROVING POSTPETITION MONTHLY PAYMENTS TO ACCOUNTANT FOR DEBTOR IN POSSESSION

STAN BERNSTEIN, Bankruptcy Judge.

Issue:

Should the Court grant the application of the debtor in possession to engage an accounting firm under a compensation arrangement in which the accountant will be paid his invoices on a monthly basis in an amount of $600 at an hourly rate of $175, not to exceed $7,200 for the engagement, subject to the submission and allowance of a final applica-

tion for compensation. The United States trustee made an oral objection to this compensation arrangement. After a hearing, the Court overruled the objection and granted the application, retroactive to the petition date.

Background:

The debtor, a closely held corporation, filed for relief under chapter 11 on July 8, 1997. Before the petition date, the company paid a $6,000 retainer and advanced the $800 filing fee to its counsel. On August 14, 1997, the debtor in possession attended the initial case management conference, scheduled by the Court, at which its counsel represented that the debtor wished to retain an insolvency accountant, but that accountant declined to be engaged unless he was assured by order of the court that he could be paid on a monthly basis. Counsel also represented that in an apparent change in policy, the United States trustee reported through her attorney advisor that she would no longer approve any monthly payment arrangements to accountants in chapter 11 cases. The Court then directed that a formal application be filed, supported by an affidavit detailing the actions taken to engage an accountant on terms that were acceptable to the United States trustee, report on the success or failure of these efforts, and set forth its argument why the trustee's anticipated objections should be overruled.

On September 22, 1997, the debtor in possession filed its application supported by a detailed affidavit. The application was scheduled for hearing upon notice to all creditors and the United States trustee at the next status conference in open court on October 9, 1997. No written objections were filed to the application.

Discussion:

■ Counsel for debtor in possession argued that it is absolutely essential for an experienced insolvency accountant to be engaged by the debtor in possession in order to satisfy the detailed and exacting operating guidelines of the United States trustee imposed upon chapter 11 debtors. Moreover, by local rule, all the judges of this District to whom chapter 11 cases are assigned require

the filing of copies of the detailed monthly operating statements with the Court—the originals are filed with the United States trustee. The judges then review the statements in chambers. A judge then may make further inquiry concerning these statements at periodic status conferences held in each chapter 11 case under section 105(d) of the Bankruptcy Code.

From the perspective of the Court, the United States trustee, and the creditors, the accountant serves as the "cop on the beat." In many lower middle market cases, no creditors' committee is formed, and, therefore, no accountant is employed by the committee. The only independent professional active in the case is then the accountant for the debtor in possession. For it is the accountant who accepts the responsibility for assuring all parties in interest that proper books and records are maintained, that all insurance is in place, that all postpetition administrative expenses—including the quarterly United States trustee' fees—are paid as they become due, including quarterly deposits of postpetition taxes, that no unauthorized payments of unsecured or priority claims are paid, that measures are instituted to curtail operating losses, that the debtor in possession builds up a fund to satisfy accruing professional fees and any amount necessary for an initial distribution due under a proposed plan of reorganization. As far as the plan and disclosure statement, this Court places heavy emphasis upon proof of feasibility as a condition for confirmation. That requires a detailed set of cash flow projections, supported by sound business assumptions that are tied to the debtor's postpetition performance and to its prior and projected history.

In this case, the debtor in possession through its counsel solicited the retention of accountants who were experienced in lower middle-market chapter 11 cases. Given the considerable responsibility assigned to this role, and the need for the accountant to be very cost-efficient, counsel took the lead in identifying suitable candidates for the position when the company's long-time prepetition accountants were unfamiliar with chapter 11 procedures and declined to go forward. Each of the four competent accounting firms

who were contacted declined to accept any engagement unless their invoices were paid monthly. In light of these local market constraints, the debtor selected Howard Fishman, an experienced insolvency accountant.

The Court had an independent opportunity to test the representations of counsel for the debtor in possession. The Court responded to an invitation by the Litigation Services Committee of the New York State Certified Public Accountants Society–Nassau County Chapter to participate in a monthly evening meeting to discuss issues relating to engagements, compensation, and conflicts of interest. At that meeting, attended by more than 30 local accounting firms interested in insolvency matters, the Court participated in an extended open question and answer period at which the United States trustee's position was discussed. It became very clear from statements made by several accounting firms in attendance at that meeting that they were unwilling to accept engagements in bankruptcy cases on other than the same terms they offered to their solvent clients. Most of these firms are of very modest size, and the partners stated that they could not carry the receivables, especially over the periods of time their firms would face in most chapter 11 case. After more than twenty years in private practice, this Court is sufficiently wary about self-serving statements made by persons seeking employment opportunities in chapter 11 bankruptcy cases. Nevertheless, the Court is satisfied that the representations of counsel and his detailed report of his lack of success in recruiting accountants who will accept the carrying costs and credit risk imposed by the United States trustee are credible and convincing.

■ Fortunately, the Bankruptcy Code builds in considerable flexibility for determining appropriate terms and safeguards of engagement for professional persons to be employed by the trustee or debtor in possession. While it is true that under section 331 of the Bankruptcy Code professional persons are ordinarily expected to file applications for interim compensation not more frequently than every 120 days, that practice can be modified upon a proper showing of cause. In fact, most attorneys in these lower middle-

market cases will not take these cases on unless they receive at least one-half of what they anticipate their aggregate projected fees will be in these cases. Once the petition is filed, it is often then that the accountant for the debtor in possession is usually approached. At that time, there are usually no uncommitted funds on hand to pay a advance retainer to the accountant.

■ Section 328(a) points to several non-exclusive options for payment arrangements:

The trustee [read: debtor in possession], with the court's approval, may employ or authorize the employment of professional person ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee.

The flexibility written into this standard encourages bankruptcy judges to approve compensation arrangements that reflect market conditions and to fashion arrangements suitable to the circumstances of the case before it. In this district, the practice of setting a cap of accounting fees in chapter 11 cases is prescribed by the local rules, a cap which may be reopened and increased for cause shown. This practice is based upon the premise that the accounting function is fairly routine.

There is also another factor that should not be overlooked. By training and professional standards, accountants are different from attorneys. As certified public accountants, they must be independent, and are not bound by their professional canons, as lawyers are, to be zealous advocates for their clients. Indeed, accountants are "engaged" by their clients, and "do not represent" them. This is more than a term of art; it is an essential difference in professional training and orientation.

It is also true that in the very few reported opinions concerning postpetition payments to counsel for the chapter 11 debtor under a "post-petition retainer," the focus is generally on monitoring costs by various practical strategies in the large cases. Indeed, some of these opinions rely upon a "mega-case exception" for retainers, and reject the arrangement in middle market cases. These retainers are now referred as "Knudsen re-tainers" after the lead case in which this practice was approved and rationalized. *See United States Trustee v. Knudsen Corp. (In re Knudsen Corp.)*, 84 B.R. 668 (9th Cir. BAP 1988). There is, however, nothing in the language of the Code that limits "periodic retainer payments" to the larger cases. This court is disinclined to follow cases such as *In re Shelly's, Inc.*, 91 B.R. 803 (Bankr.S.D.Ohio 1988), *ICS Cybernetics, Inc.*, 97 B.R. 736 (Bankr.N.D.N.Y.1989); *In re Pacific Forest Indus.*, 95 B.R. 740 (Bankr.C.D.Cal.1989) on the ground that the rationale of those holdings is not persuasive and undermines the tight reporting requirements of the United States trustee and the Court.

In this Court's experience rarely is any challenge made to applications filed by accountants for compensation of routine auditing services. Nor should there be. There is nothing especially esoteric about reviewing monthly management compilations, assisting management in preparing these compilations, assisting and reviewing cash flow projections monthly audits or in preparing state and federal tax returns. Those services can be performed for a flat monthly fee.

Under the circumstances, the United States trustee cannot have it both ways: (a) insist upon meticulous and timely preparation and filing of monthly operating reports, which is usually beyond the in-house capability of most lower middle-market companies to generate, threaten the debtor in possession with conversion or dismissal of its cases if that the reporting requirement is not met, but (b) at the same time then deny the debtor an opportunity to employ experienced and cost-efficient insolvency accountants of their choice because the United States trustee sets up artificial barriers to the employment of those very accountants.

There is probably no greater challenge to the courts in this era than in developing cost-efficient case administration strategies for small business reorganizations. In view of our increasingly aggressive case management of chapter 11's, there is little risk that accountants will abuse postpetition retainers. In this case, the accountant has agreed to be paid only 75% of his monthly invoices, sub-

ject to a cap on his fees, and only after a fifteen day objection period has passed upon notice to the United States trustee. This Court would not have demanded a 25% hold-back—the limited empirical data shows that flat percentage hold-backs are ineffective incentives to professional performance, but if that is what the accountant and the debtor in possession have agreed, then the Court will ratify that arrangement.

The United States trustee has asked whether this Court is adopting a per se rule with respect to the retention terms of accountants in lower middle market cases. The short answer is, "No." The Court will review each application under the totality of circumstances of each case, and upon notice and hearing to all creditors and the United States trustee. But it is also fair to say that the presumption as a matter of policy will be to encourage accounting firms to compete for entry into this market. At present there are only two or three firms in this District that appear to control all the work. Although this Court's experience with these firms have generally been favorable, that oligopolistic situation is neither healthy nor cost-efficient.

An order consistent with this opinion has been entered.