**In re METRICOM, INC., Debtor.**

**No. 01–53291–ASW.**

United States Bankruptcy Court, N.D. California.

March 31, 2002.

---

Robert S. Gebhard, Nanette Dumas, Office of the United States Trustee, San Jose, CA, for U.S. Trustee.

Paul N. Silverstein, Andrews & Kurth LLP, New York City, for Bondholders Committee.

John D. Fiero, Pachulski, Stang, Ziehl, Young & Jones, San Francisco, CA, for Trade Committee.

Margaret Sheneman, Murphy, Sheneman, Julian & Rogers, San Francisco, CA, for debtors.

Richard Chesley, Houlihan, Lokey, Howard & Zukin, Chicago, IL, for Houlihan Lokey.

James L. Lopes, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, San Francisco, CA, for Ernst & Young.

MEMORANDUM DECISION DENYING APPLICATION FOR APPOINTMENT OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL AS FINANCIAL ADVISORS TO BONDHOLDERS' COMMITTEE

ARTHUR S. WEISSBRODT,
Bankruptcy Judge.

The Official Committee of Bondholders ("Bondholders' Committee") in this Chap-

ter 11 case[1] filed an application ("Application") to appoint the firm of Houlihan Lokey Howard & Zukin Capital ("Houlihan") as its financial advisor, retroactively as of July 2, 2001. The United States Trustee ("U.S.Trustee") filed an objection to the Application. Both parties filed briefs in support of their respective positions,[2] and the matter was heard by this Court. At the hearing, the U.S. Trustee's objection was sustained and the Application was denied, subject to Houlihan removing provisions for indemnity and/or contribution and exculpation from its required terms of employment within one week. Houlihan declined to remove such provisions and the U.S. Trustee has submitted a proposed order denying the Application, approved as to form by counsel for Houlihan. This Memorandum Decision constitutes the Court's findings of fact and conclusions of law, pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I.

### TERMS OF APPOINTMENT AT ISSUE

The U.S. Trustee's objection is based on terms of Houlihan's appointment that would require the bankruptcy estate to provide certain protections to Houlihan and others.[3] Appointment is sought on the terms set forth in a pre-petition "engagement letter" from Houlihan to Debtor dated May 22, 2001, which appears as an exhibit to the Application and provides in pertinent part as follows:

... [Debtor] has agreed to compensate [Houlihan] and to undertake the indemnification obligations to [Houlihan] pursuant to the terms of this Agreement. None of the Committee, its members, their constituents, or any of their advisors or professionals (including, but not limited to, Noteholders' Counsel) shall be liable for the fees, expenses or other obligations, contractual or otherwise, payable or due to [Houlihan] hereunder. Notwithstanding such arrangement, [Houlihan's] duties hereunder run solely to Noteholders' Counsel on behalf of the Committee and [Houlihan] is not authorized to be, and will not purport to be, an agent of the [Debtor] for any purpose....

. . . .

As a material part of the consideration for the agreement of [Houlihan] to furnish its services under the Agreement, [Debtor] agrees to indemnify and hold harmless [Houlihan] and its affiliates, and their respective past, present and future directors, officers, shareholders, employees, agents and controlling persons [as defined] to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to the Agreement, any actions taken or omitted

---

1. Pursuant to an order made on July 5, 2001, five related Chapter 11 cases that were commenced on July 2, 2001 have been associated for purposes of joint administration: Metricom, Inc. (Case No. 01–53291) ("Debtor"); Metricom Finance, Inc. (Case No. 01–53297); Metricom DC, LLC (Case No. 01–53300); Metricom New York, LLC (Case No. 01–53301); and Metricom Investments DC, Inc. (Case No. 01–53302). For convenience, the five associated cases will be collectively referred to as a single case.

2. The Bondholders' Committee appears to have delegated its support of the Application to Houlihan. Houlihan filed the brief in response to the U.S. Trustee's objection and Houlihan's counsel was the primary participant in oral argument, although counsel for the Bondholders' Committee did appear at the hearing.

3. The U.S. Trustee originally objected on various additional grounds, including the scope of duties and the amount of compensation, but those issues were resolved without hearing.

to be taken by an Indemnified Party (including acts or omissions constituting ordinary negligence) in connection with [Houlihan's] provision of services to the Committee and/or Noteholders' Counsel, or any Transaction (as defined herein) or proposed Transaction contemplated thereby. In addition, [Debtor] agrees to reimburse the Indemnified Parties for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; provided, however, the [Debtor] shall not be liable under the foregoing indemnity and reimbursement agreement for any loss, claim, damage or liability which is finally judicially determined to have resulted primarily from the willful misconduct or gross negligence of any Indemnified Party.

If for any reason the foregoing indemnification is unavailable to any Indemnified Party or insufficient to hold it harmless, the [Debtor] shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the [Debtor], on the one hand, and [Houlihan], on the other hand, in connection with the actual or potential Transaction and/or the services rendered by [Houlihan]. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law or otherwise, then the [Debtor] shall contribute to such amount paid or payable by an Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the [Debtor], on the one hand, and [Houlihan], on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, the ag-gregate contribution of all Indemnified Parties to any such losses, claims, damages, liabilities and expenses shall not exceed the amount of fees actually received by [Houlihan] pursuant to the Agreement.

The [Debtor] shall not effect any settlement or release from liability in connection with any matter for which an Indemnified Party would be entitled to indemnification from the [Debtor], unless such settlement or release contains a release of the Indemnified Parties reasonably satisfactory in form and substance to [Houlihan]. The [Debtor] shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any claim or action without the [Debtor's] prior written consent.

The [Debtor] further agrees that neither [Houlihan] nor any other Indemnified Party shall have any liability, regardless of the legal theory advanced, to the [Debtor] or any other person or entity (including the [Debtor's] equity holders and creditors) related to or arising out of [Houlihan's] engagement, except for any liability for losses, claims, damages, liabilities or expenses incurred by the [Debtor] which are finally judicially determined to have resulted primarily from the willful misconduct or gross negligence of any Indemnified Party.

The indemnity, reimbursement, contribution and other obligations and agreements of the [Debtor] set forth herein shall apply to any modifications of the Agreement, shall be in addition to any liability which the [Debtor] may otherwise have, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the [Debtor] and each Indemnified Party. The foregoing provisions

shall survive the consummation of any Transaction and/or termination of the relationship established by this Agreement.

The obligations of [Houlihan] are solely corporate obligations, and no officer, director, employee, agent, shareholder or controlling person of [Houlihan] shall be subjected to any personal liability whatsoever, in his individual capacity, to any person, nor will any such claim be asserted by or on behalf of any other party to this Agreement or any person relying on the services provided hereunder. The [Debtor's] obligations with respect to any and all payments owing to [Houlihan] and the indemnification, reimbursement, contribution and other similar obligations of the [Debtor] under this Agreement shall survive any termination of this Agreement.

These terms provide for indemnity and/or contribution, and also for exculpation.[4] The indemnity/contribution provisions call for the estate to indemnify Houlihan and its agents against claims by third parties that arise out of Houlihan's services, and/or to contribute to Houlihan's expenses in defending against or satisfying such claims—the exculpation provisions prevent the estate and its creditors from suing Houlihan and its agents for damages caused by Houlihan's services—none of the provisions apply to claims that are "finally judicially determined to have resulted primarily from the willful misconduct or gross negligence" of Houlihan or its agents, but those terms are not defined and the manner in which that exception would be applied is not specified.[5]

In response to the U.S. Trustee's objection, Houlihan offered to make the following changes to the provisions set forth in the Application:

1/ No payment of indemnification or contribution until the Court had approved a fee application for such payment after a noticed hearing.

2/ No indemnification or exculpation for any claim judicially determined to have arisen out of bad faith, self-dealing, breach of fiduciary duty, gross negligence, or willful misconduct.

3/ U.S. Trustee could object to any claim for indemnification, contribution, or exculpation.

4. Indemnity or contribution and exculpation are different methods of reaching similar, but not identical, results. In general: indemnity means that, if a third party sues a professional based on the professional's services to the client, the client will pay to defend the professional and will pay any judgment against the professional; contribution means that, if a third party sues both a professional and the professional's client based on the professional's services to the client, the client will contribute some or all of the professional's costs to defend and to satisfy any judgment against the professional; exculpation means that the client agrees not to sue the professional based on the professional's services to the client. Under each of these arrangements, the client bears some or all of the financial consequences of the professional's actions. The terms proposed by Houlihan provide for all three protections—indemnity, contribution, and exculpation—so the issue of whether any one or two of those provisions might be reasonable under the circumstances of this case is not before the Court.

5. The term "finally judicially determined" in this context raises a number of questions. For example, if the Debtor, a Creditors' Committee, or other third parties were to claim that Houlihan engaged in gross negligence or wilful misconduct, would the estate have to indemnify Houlihan unless the case actually went to trial and final judicial decision? Would this provision mean that the Debtor or a subsequent trustee could not settle the case without indemnifying Houlihan? Moreover, another term provides that the estate could not even assert a claim against a Houlihan officer, director, or employee who damaged the estate through wilful misconduct.

4/ The following provision to be eliminated:

> ... the aggregate contribution of all Indemnified Parties to any such losses, claims, damages, liabilities and expenses shall not exceed the amount of fees actually received by [Houlihan] pursuant to the Agreement.

The U.S. Trustee did not consider her objection to be resolved by Houlihan's proffered modifications, referring to them as "meaningless procedural safeguards or alternative language". The U.S. Trustee noted that, even with the modified provisions, Houlihan would still enjoy absolute immunity for negligence, with the Court's role relegated to determining the amount of any claim by Houlihan and whether it fell within the scope of the provisions. The Court notes that, as discussed below, § 328(a) permits deviation from approved terms of a professional's employment only when they "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions"— Houlihan's proposed modifications would not permit the Court to reject future application of the subject provisions without first finding that approval of them was improvidently made in light of unforeseeable developments.

## II.

### APPLICABLE LAW

The parties agree that the issue presented is whether the Application complies with § 328(a): [6]

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this

title, as the case may be, *on any reasonable terms and conditions of employment,* including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions. [emphasis supplied]

The question is whether the terms and conditions of Houlihan's employment are "reasonable" in the context of this case.

The U.S. Trustee correctly points out that the weight of authority rejects indemnity/contribution provisions and/or exculpation provisions for financial advisors in bankruptcy cases, citing the following cases:

*In re United Companies Financial Corp.,* 241 B.R. 521, 524 (Bankr.D.Del. 1999), which required removal of exculpation provisions capping liability and "draconian" indemnity provisions extending to fraud and willful misconduct.

*In re Gillett Holdings, Inc.,* 137 B.R. 452, 458 (Bankr.D.Colo.1991) ("*Gillett* "), finding that indemnity of fiduciaries for negligence or misfeasance was "entirely improper and unacceptable".

*In re Drexel Burnham Lambert Group,* 133 B.R. 13, 27 (Bankr.S.D.N.Y.1991), noting that "Simply stated, indemnification agreements are inappropriate. Moreover, we know that investment bankers carry coverage to protect themselves from malpractice liability. This expense, like professional fees to negotiate a retention, are

---

**6.** Unless otherwise noted, all statutory references are to Title 11, United States Codes

("the Bankruptcy Code"), as amended on October 22, 1994.

part of an investment banker's overhead, usually more than adequately covered by a retention fee."

*In re Mortgage & Realty Trust,* 123 B.R. 626, 631 (Bankr.C.D.Cal.1991) (*"Mortgage & Realty Trust"*), stating "The reason for hiring a professional person is that the person has special expertise that is beneficial to the debtor or the committee. The Court expects that such professionals would be especially diligent in making sure that they meet the standard of care for exercising their expertise in their work in the case. Indemnification is not consistent with professionalism [citation omitted]".

*In re Allegheny International, Inc.,* 100 B.R. 244, 246–47 (Bankr.W.D.Pa.1989), noting that the investment bankers in that case "expect to receive handsome compensation for their services. At those rates of compensation, we do not think that it is unreasonable for their services to be presented with a high standard of professionalism. Indemnification and professionalism are not entirely consistent"—the Court went on to hold that investment bankers and/or financial advisors hired by a debtor and a creditors' committee are fiduciaries, which

> ... "have obligations of fidelity, undivided loyalty and impartial service in the interest of the creditors they represent." [Citation omitted] At this juncture, we should be reminded of Judge Cardozo's celebrated remarks in *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545, 546 (1928): "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden by those bound by fiduciary ties ... Not honesty alone, but the punctilio of an honor the most sensitive, is then the

standard of behavior." In this connection, indemnification for negligence may be acceptable in "the workaday world for those acting at arm's length." However, holding a fiduciary harmless for its own negligence is shockingly inconsistent with the strict standard of conduct for fiduciaries.

Houlihan argues that the U.S. Trustee advocates a *"per se rule"* against indemnity/contribution and/or exculpation for financial advisors, whereas § 328(a) prohibits no terms that are "reasonable" in the context of a given case, including provisions such as those here, citing *In re Joan and David Halpern, Inc.,* 248 B.R. 43 (Bankr.S.D.N.Y.2000), *aff'd,* 2000 WL 1800690 (S.D.N.Y.) (*"Halpern"*).[7] Houlihan also argues that the recent trend is *contra* to the cases cited by the U.S. Trustee, citing several unpublished decisions from bankruptcy courts in Delaware and New York that approve indemnity for financial advisors, and stating that provisions such as those here are "standard" features of Houlihan's client contracts in both bankruptcy and non-bankruptcy cases.

With the exception of *Halpern,* the authority cited by Houlihan is of no precedential value, consisting as it does of unpublished decisions from other jurisdictions (which the U.S. Trustee describes as a "dubious practice"). The U.S. Trustee notes that the non-precedential opinions cited by Houlihan do not include a recent one by a local bankruptcy court that declines to approve indemnity provisions for a financial advisor, *In re Pacific Gas & Electric Co.,* Case No. 01–30923 (Bankr.N.D.Cal., 7/6/01) (*"PG & E"*). In that unpublished

---

**7.** The U.S. Trustee denies advocating a *per se* rule, and this Court does not perceive that to be the U.S. Trustee's position.

decision, the Bankruptcy Court noted a lack of evidence that indemnity was a prerequisite for the necessary services, or that such provisions are "consistent with industry practice"—the Court went on to say:

> This court is of the view that the cases cited by the [U.S. Trustee] that disapprove of indemnity agreements for investment bankers are well reasoned, both from a point of view of a legal analysis and also from the point of view of fundamental bankruptcy policy. Indemnity is inappropriate for professionals employed by representatives of bankruptcy estates. The court would rather presume that [the professional] possesses sufficient expertise and sophistication that it will *not* be negligent in the performance of its duties; if there is any doubt about that, it would be inappropriate for the estate to be prohibited from seeking compensation if it suffers as a result of such negligence.[8]

■■■ As a general proposition, this Court agrees with the view expressed by the Bankruptcy Court in *PG & E*, which is the majority view represented by the published decisions cited by the U.S. Trustee. However, Houlihan is correct that the Code does not prohibit indemnity/contribution or exculpation provisions, and that there is no statutory or binding bankruptcy case law basis upon which to establish a *per se* rule against such protections for professionals in bankruptcy cases.[9] As noted in *Halpern*, the issue is whether particular terms are reasonable under given circumstances, and such a determination can only be made on a case by case basis. According to the unpublished decisions cited by Houlihan, there are at least seven instances of bankruptcy courts finding indemnity/contribution and/or exculpation provisions reasonable in the context of specific cases, and anything is possible under the infinite number of potential fact patterns that might ever arise. Nevertheless, as the proponent of the Application for approval of the subject provisions, the Bondholders' Committee (or Houlihan, by delegation) bears the burden of establishing that such terms of employment are reasonable in the context of this case as required by § 328(a), and that showing has not been made.

For example, the U.S. Trustee points out that the protections Houlihan seeks from the estate in the form of indemnity/contribution and exculpation might be available from an insurer, such that it would not be necessary (and hence not reasonable) for the estate to incur that burden in order for Houlihan to be protected.[10] Houlihan's attorney stated in oral argument that insurance is not available, but the only evidence presented on that issue is a declaration by Houlihan's officer Chris Dimauro, which is not quite so definite, states no facts in support of its conclusions, and lacks detail:

---

**8.** Although the Court speaks of "indemnity" provisions being inappropriate for professionals in bankruptcy cases, its reference to the estate being prohibited from seeking compensation for damage caused by professional negligence suggests that exculpation provisions are also being discussed. However, as noted above, indemnity and exculpation are merely different methods of achieving similar results, which results can harm the estate regardless of how they are reached.

**9.** The Court notes that non-bankruptcy law or the rules of conduct governing a profession might prohibit the professional from seeking indemnity/contribution or exculpation from clients, *see, e.g., Mortgage & Realty Trust* discussing that point with respect to California attorneys.

**10.** No party has suggested that the estate has purchased insurance to protect itself from any wrongdoing by Houlihan.

... the risks to [Houlihan] from any claim relating to a financial restructuring engagement that involves hundreds of millions of dollars, and often more, is enormous. Indeed, this is a risk that [Houlihan] [,] a privately owned organization with less than 250 professional employees[,] does not, and cannot insure against. Accordingly, absent limited indemnification and exculpation of the type contained in the Indemnification Provisions, [Houlihan] would be required to either substantially increase the fees its [sic] charges for its services (to cover additional insurance if it is available, or "self-insure" against the risk), or forego [sic] the engagement.

There is no evidence that insurance is either unavailable or prohibitively expensive, nor is there any evidence of what amount a "substantially" increased offsetting fee would be (what Mr. Dimauro considers "substantial" may or may not affect the reasonableness of the subject provisions under all of the circumstances of this case).

Further, there is no evidence that the Bondholders' Committee could not have obtained comparable services for the same price from another financial advisor without having to agree to the subject provisions. Indeed, both the Debtor and the Official Committee of Unsecured Trade Creditors have been authorized to retain well-known firms[11] as financial advisors for similar purposes on terms that do not include indemnity/contribution or exculpation provisions—that is evidence of such services being available for this case without such provisions, and also evidence that such provisions are not *de rigeur* in the industry.

Moreover, when the Application was heard, there was no evidence that Houlihan would not have provided services without the subject provisions. To the contrary, Houlihan had been providing post-petition services for some four months without benefit of appointment and with knowledge of the U.S. Trustee's objection to the subject provisions.[12]

As the U.S. Trustee points out, numerous professionals have been appointed in this case for the Debtor and the two committees of creditors (including the two other financial advisors referred to above), and provisions for indemnity/contribution or exculpation are not included among the terms of any of those appointments. Accordingly, no matter how "standard" such protections may be for Houlihan, they are not the norm in this Chapter 11 case. Houlihan states that applicable non-bankruptcy law forbids certain professionals such as attorneys and accountants from seeking indemnity/contribution and/or exculpation, but the fact remains that the other two financial advisors appointed in this case have not received it either, despite an apparent lack of external prohibitions against it. Houlihan has not shown that it is reasonable for Houlihan, alone

---

11. PricewaterhouseCoopers LLP, and E & Y Capital Advisors LLC, respectively.

12. Since the hearing, Houlihan has declined to remove the subject provisions despite this Court's admonition that appointment would be denied without such removal, and despite the U.S. Trustee's stated intent to object to any compensation application that might be filed without benefit of appointment. Houlihan did ultimately seek compensation for post-petition services as a general administrative expense under § 503(b)(1)(A) and/or on the basis of *quantum meruit*, the U.S. Trustee did object, and the objection was sustained because the relief sought by Houlihan is unavailable under, respectively, *In re Weibel, Inc.*, 176 B.R. 209 (9th Cir. BAP 1994) and *In re Occidental Financial Group, Inc.*, 40 F.3d 1059 (9th Cir.1994). Houlihan has filed a notice of appeal from the order denying its application for compensation.

out of all the many professionals in this case, to be given special protections at the expense of the estate—it is not unreasonable for Houlihan to want such protections, but that does not mean that it is reasonable for the estate to provide them to a single professional whose services are substantially the same as those rendered by the other financial advisors in the case.

Houlihan notes that the Bankruptcy Code was intended to be applied "flexibly" in order to encourage professionals to serve in bankruptcy cases, a contention that is not disputed by either the U.S. Trustee or this Court. Houlihan cites legislative history (H.R.Rep. No. 595 95th Cong., 1st Sess. 329–30 (1977), U.S.Code Cong. & Admin.News 1978, p. 5963) and cases from other jurisdictions (*In re Busy Beaver Bldg. Ctr., Inc.*, 19 F.3d 833 (3d Cir.1994); *Niover Bagels*, 214 B.R. 291 (Bankr.E.D.N.Y.1997)) for the proposition that market conditions pertaining to non-bankruptcy cases should be considered in determining the reasonableness of employment terms and conditions for bankruptcy cases, but those authorities deal with the issue of compensation amount rather than indemnity/contribution or exculpation.[13] Houlihan cites Delaware law[14] and California law governing corporations and trusts for the proposition that those states permit indemnification of financial advisors, but cites no published decision other than *Halpern* in which indemnity/contribution and/or exculpation were approved for professionals serving in a bankruptcy case.[15]

Houlihan points out that the terms of the Application were negotiated at arm's length between Houlihan and the Bondholders' Committee, but Houlihan does not claim to have negotiated with the estate, which is the entity that would bear the burden of the provisions for indemnity/contribution and exculpation.[16] Houlihan notes that the estate consists of creditors, that both official committees of creditors were given notice of the Application, and that neither committee objected—however, creditors themselves were not given notice and the two official committees represent only unsecured trade creditors and bondholders, not creditors with secured or priority or administrative claims, and not any equity holders.[17] In any event, the estate could someday also

---

13. In *Mortgage & Realty Trust,* it was argued that the cost of providing indemnity is subject to § 330(a)(3), which requires "the amount of reasonable compensation" for a professional to be determined with reference to, *inter alia,* "the customary compensation charged by comparably skilled practitioners in cases other than cases under" the Bankruptcy Code. The Bankruptcy Court rejected that argument and held that the "compensation" referred to in § 330 is only money or money's worth, such that an indemnity provision is not within the scope of that section. That precise issue is not before this Court and is not determined by this ruling. As a general proposition, this Court is prepared to consider the marketplace in deciding whether any term of professional employment (not just compensation) is reasonable—but that factor is not necessarily dispositive and, as noted above, Houlihan has not shown that the marketplace does strictly impose terms such as the subject provisions.

14. Houlihan contends that Delaware law is the applicable non-bankruptcy law here, because Debtor is a Delaware corporation.

15. The Court recognizes that indemnity/contribution and/or exculpation protections for some kinds of fiduciaries are sometimes permitted in situations outside of bankruptcy, as they have been in some bankruptcy cases, see, e.g., *Halpern.*

16. On the day of the hearing, Debtor filed a pleading stating that Debtor did not object to the indemnity provisions of the Application.

17. The language of the proposed appointment purports to limit Houlihan's liability "to the world", not just creditors and equity holders. It could be read to encompass anyone, including those not before the Court.

include a bankruptcy trustee who would be bound by the subject provisions. The Court must be particularly vigilant when asked to burden the estate now in a way that would circumscribe the rights of a new estate representative who never agreed to the subject provisions—*e.g.,* when a court is asked to approve a stipulation permitting cash collateral use in exchange for grants and waivers by the estate, its role properly includes consideration of whether a future trustee's ability to administer the estate would be unduly impaired by the concessions that the debtor itself is prepared to make. For example, the Bankruptcy Court in *In re Glosser Bros., Inc.,* 102 B.R. 38, 42 (Bankr.W.D.Pa.1989) declined to approve a contract with indemnity provisions for an investment banker/financial advisor after finding that it "bears all the signs of an 'adhesion' contract. Debtors seem to lack any bargaining power as to these terms and conditions". As has been noted in the context of an agreement calling for a professional to receive "success fees":

> The Bankruptcy Code provisions "protect against the danger that a prospective debtor, willing to do whatever necessary to secure the counsel of its choice, may bargain away more than is reasonable ... unknowingly or otherwise. [Citation omitted.] The complexity of a prospective debtor's financial affairs and the business sophistication incident thereto may well render such a debtor more vulnerable not less, to making concessions deemed essential to obtain[ing] counsel sufficiently qualified to manage and complete a successful reorganization." [Citation omitted.] Moreover, "[f]reedom of contract is necessarily limited in the bankruptcy context ... debtors are not at liberty to bargain away the rights and responsibilities of a debtor-in-possession, nor

the protections afforded creditors and other parties in interest in a bankruptcy case, under the guise of freedom of contract. They cannot evade the jurisdiction of the Court by choice, nor limit exercise of the Court's discretion by fiat. They cannot negate or defer application of the Bankruptcy Code and Rules by design." [Citations omitted.] *Gillett,* at 460.

At the hearing, Debtor, the Bondholders' Committee, and Houlihan argued that there may well be no practical effect to the subject provisions under the circumstances of this case. Houlihan noted that it has never had to resort to the protections it receives from its clients, and everyone appears to agree that Houlihan's services are essentially completed now that Debtor has sold substantially all assets. Debtor argued that it is not likely that a bankruptcy trustee will be appointed at this stage of the case, so the fact that the subject provisions would bind a future trustee is probably irrelevant. The Bondholders' Committee noted that Debtor's case did not develop as a reorganization but merely as a liquidation, so that Houlihan did not provide the kind of services tending to create a risk of liability that would ever trigger indemnity/contribution or exculpation rights.

Assuming for the sake of argument that all of these contentions are true, they merit consideration but do not resolve the issue. First, the fact that there *may* be no *currently apparent* harm in binding the estate to perform a future act that it *probably will not be called upon* to perform does not mean that it is reasonable to impose such a burden upon the estate in the first place—even if the estate's risk were clearly *de minimis* (and the Court makes no such finding on the record before it in this case), it is nevertheless Houlihan's burden under § 328(a) to show that

it is reasonable for the estate to be exposed to any risk at all, and that showing has not been made. For example, the fact that Houlihan's services are now completed does not mean that a creditor or equity security holder will not claim that Houlihan harmed the estate during the several months in which services were rendered—and the fact that the kind of services provided by Houlihan may not usually be a basis for liability does not mean that someone will not attempt to prove fault this time, perhaps with success. Second, while Debtor considers the possibility of a trustee to be remote because Debtor is merely liquidating and has sold most of its assets, the fact remains that, even under those circumstances, it cannot be assured that need for a trustee will never arise, *e.g.*, to bring avoidance actions that Debtor is reluctant to prosecute, etc. It is always possible that, for some currently unforeseen reason, an estate will find itself in the hands of a new representative whose administration would be hampered due to restrictions that others were willing to accept in the past. Third, protestations that the issue is no more than academic in this case cut both ways—if Houlihan does not actually need protection here, then Houlihan's arguments that the Court should approve exculpation and indemnity/contribution provisions as reasonable are weakened. Indeed, a lack of actual need would suggest that Houlihan must be insisting on the subject provisions as a matter of policy in order to bolster a position that it plans to take in future cases by showing that these provisions were approved in this case.[18] If that were true, it would by no means be reasonable for this estate to incur the risk of having to provide indemnity or contribution, or of being prevented by exculpation from seeking damages for professional negligence or worse, merely to serve some strategic business purpose of Houlihan's, unrelated to the actual circumstances of this case.

## CONCLUSION

Based on the record before the Court, the Application's provisions for indemnity, contribution, and exculpation have not been shown to be reasonable terms of employment under the circumstances of this case. Neither the Code nor binding bankruptcy case law provides a basis for a *per se* rule against provisions of that kind for financial advisors or any other professionals in bankruptcy cases,[19] and no such rule is adopted or established here. Rather, this Court holds that the proponent of the Application has not carried its burden to establish the reasonableness of the subject provisions in the context of this case, as is required by § 328(a).

Accordingly, the order submitted by the U.S. Trustee and approved as to form by counsel for Houlihan will be issued.

---

18. At the hearing, counsel for the Bondholders' Committee surmised that "[Houlihan's] need for indemnity is one I suspect of policy for all of their engagements".

19. As noted above, the ethical principles of a profession may forbid its members to seek indemnity/contribution or exculpation.