In re DEC INTERNATIONAL, INC., Debtor.

Ira Bodenstein, United States Trustee for Region II, Appellant,

v.

KPMG Corporate Finance LLC, Appellee.

No. 02–C–0152–C.

United States District Court, W.D. Wisconsin.

Aug. 5, 2002.

Sheree G. Dandurand, Madison, WI, for Ira Bodenstein.

Ira S. Greene, Hogan & Hartson, L.L.P., New York City, for KPMG Corporate Finance LLC.

Stephen E. Garcia, Kaye Scholer, LLP, Chicago, IL, for DEC Intern., Inc.

## OPINION AND ORDER

CRABB, Chief Judge.

Appellant Ira Bodenstein, United States Trustee, has appealed from an order entered by the United States Bankruptcy Court on October 10, 2001, allowing debtor to retain KPMG Corporate Finance as its investment adviser to assist in the disposition of certain assets of DEC International and its subsidiaries. The Trustee does not object to the retention of KPMG in and of itself but objects to the fact that the retention agreement includes a provision requiring the debtor to reimburse KPMG for any damages for which it may become liable arising out of its role as the debtor's investment adviser. The agreement exempts from indemnification losses caused by acts that were taken in bad faith, were grossly negligent or were the result of willful misconduct; it would apply to acts of ordinary negligence. The Trustee objected unsuccessfully to the provision before the bankruptcy court. He filed a timely appeal to this court, limiting the appeal to the contention that indemnification provisions for professional advisers can never constitute "reasonable terms and conditions of employment" under 11 U.S.C. § 328(a).

Jurisdiction is present. 28 U.S.C. § 158(a). At oral argument, the Trustee asked for an order granting him leave to appeal under Fed. R. Bankr.P. 8003(c), because an order approving employment is not automatically appealable as a final order. Exercising the discretion given to district courts to hear appeals of non-final matters and acknowledging that the United States believes that the issue is an important one in the administration of the bankruptcy system, I granted the motion.

I conclude that the Trustee has failed to show the necessity for a flat prohibition on indemnification provisions for professional advisers. Although such provisions need to be scrutinized with care to protect creditors, to preserve the public's perception of the fairness and integrity of the bankruptcy system, to ensure that debtors, trustees and creditors' committees have true freedom of choice in retaining financial advisers and to guard against breaches of the fiduciary duty that professional investment advisers owe to the bankruptcy estate, I cannot say that such provisions are unreasonable in all situations. They may be either reasonable or unreasonable under 11 U.S.C. § 328, depending on the circumstances of the particular retention agreement, the specific terms of the agreement, the complexity of the work involved and the nature of the particular bankruptcy proceeding. Therefore, I will not reverse the ruling of the bankruptcy court.

From the record on appeal, I make the following findings of fact.

## RECORD FACTS

Debtor and its subsidiaries filed for relief under Chapter 11 of the Bankruptcy

Code on August 17, 2001. (I am assuming that various companies referred by the parties are subsidiaries of DEC International, the only party named in the caption; if this is wrong, it is immaterial to the decision on the appeal. Therefore, I will continue to refer to "debtor" in the singular.) Debtor continues to operate its businesses while seeking relief from the debts it has accrued. About three months before debtor filed for bankruptcy, it retained KPMG Corporate Group to act as its corporate financial adviser on matters such as opportunities for sales, mergers, joint ventures, consolidations or any other business combinations involving debtor's business, securities or assets. Under the terms of the retention agreement, KPMG was to be paid a non-refundable retainer fee of $125,000, a success fee equal to the greater of $200,000 or 2% of the transaction and a guaranteed minimum fee of $1,000,000 for its services. In addition, the debtor agreed that the debtor would indemnify KPMG against all losses, claims, etc. arising out of activities performed pursuant to the agreement unless a court was to find that the losses resulted primarily from actions taken or omitted in bad faith or from gross negligence or willful misconduct.

On or about August 22, 2001, the debtor filed an application to the bankruptcy court to authorize it to retain KPMG as its investment banker. On August 27, 2001, the Trustee formed an Official Committee of Unsecured Creditors to represent the interests of the unsecured creditors in the Chapter 11 cases.

Also on August 27, 2001, the Trustee filed its objection to the debtor's application for approval of the retention of KPMG. The bankruptcy court held a hearing on the application on October 10, 2001, at which KPMG advised the court that the creditors committee, the debtor and the secured creditors had no objections to the agreement. The bankruptcy court heard no other evidence to support the request for approval, to support the reasonableness of the request, to estimate the potential cost to the creditors or to show that debtor had the financial ability to make the indemnification payments if they became necessary. Nevertheless, the bankruptcy court rejected the Trustee's objections to the arrangement and approved the retention of KPMG under the terms of the letter agreement. The bankruptcy court made no findings of fact other than to say that indemnification was "a term the people with a financial stake in the enterprise are willing to accept." Oct. 11, 2001 hearing, Tr. at 86.

The bankruptcy court approved debtor's application in an order signed on January 4, 2002, and docketed on January 9, 2002. The Trustee filed a notice of appeal on January 18, 2002.

## OPINION

■ The scope of the Trustee's appeal is very narrow. As he framed it in his brief, "[t]he sole issue involved in this appeal is whether indemnification provisions, holding professional investment bankers harmless for the consequences of negligence in connection with services provided to debtors in a bankruptcy proceeding are 'reasonable terms and conditions of employment' for purposes of 11 U.S.C. § 328(a)." Appellant's Br., dkt. # 2, at 1. At oral argument and in his briefs, the Trustee made references to the lack of evidence presented in the bankruptcy court on the reasonableness of indemnification in this case and the bankruptcy court's failure to make any findings specific to the KPMG retention agreement, but he did not make these issues part of his appeal and for that reason I will not address them.

According to the Trustee, this challenge is one of a number that United States Trustees are bringing in opposition to the approval of similar agreements signed with financial advisers. Their position is that indemnifying financial advisers for negligent acts suggests to these professionals and to the public that their performances need not measure up to the highest level of skill; substandard work will be acceptable. By its nature, an indemnification agreement sends the inappropriate message that professional negligence is approved in bankruptcy proceedings. More worrisome, it creates an unknown liability whose full scope cannot be known in advance and that could consume the entire bankruptcy estate. In short, they argue, indemnifying professionals is inconsistent with the fiduciary standards of care required on behalf of creditors and the public.

There is considerable substance to the Trustees' argument, as well as something distinctly unpalatable about the idea of indemnifying a professional adviser for its own negligence. Persons holding themselves out as professionals, whether they are plumbers or investment advisers, generally cover the costs of their own negligent acts. A homeowner would expect a plumber to pick up the cost of a replacement toilet if the plumber broke the old one while trying to repair it; a brokerage customer would expect a brokerage house to pay bank penalties if it failed to mail an anticipated income check to the bank on behalf of the customer who then had checks returned for insufficient funds. Why should a much more highly paid investment adviser be treated differently if it is negligent? At the least, why should any indemnification arrangement not be limited to claims arising out of actions taken in good faith with the reasonable belief that the actions are taken in their client's best interest? No such limit is included in KPMG's indemnification agreement; it extends to all negligent acts. It is not surprising that the Trustee considers it inappropriate.

Inappropriate or not, the question is whether the provision is illegal under the bankruptcy act. Whether it is wise or appropriate as a general rule is a question for Congress.

The employment of advisers in bankruptcy proceedings is governed by 11 U.S.C. §§ 327 and 328. Section 327 permits bankruptcy trustees to retain professional persons to assist the trustees in carrying out their duties. Section 328 authorizes the trustee to employ such a profession "on any reasonable terms and conditions of employment." Neither section says anything about indemnification agreements. In the absence of any specific statutory provision, the Trustee is forced to argue that indemnification agreements for financial advisers are illegal because they are unreasonable as a matter of law in all circumstances.

For the most part, courts addressing indemnification provisions for financial advisers have expressed concerns about them but have been unwilling to declare them void in all circumstances as against public policy. In *In re Allegheny International, Inc.*, 100 B.R. 244 (Bankr.W.D.Pa.1989), for instance, the bankruptcy court classified an investment adviser as a fiduciary in relation to the bankruptcy estate, with obligations of fidelity, undivided loyalty and impartial service in the interest of the creditors. The bankruptcy court stated that "holding a fiduciary harmless for its own negligence is shockingly inconsistent with a strict standard of conduct for fiduciaries." *Id.* at 247. However, the court allowed some form of indemnification to continue, tailoring the agreement to make it clear that the provision would not apply

to acts or omissions found by a court to be negligent or a breach of fiduciary duty (in addition to acts or omissions found to constitute gross negligence or willful misconduct) and the court reserved the right to allow or disallow any claims made against the debtor under the indemnification provision as part of its general authority to approve administrative expenses at the end of the proceedings.

In *In re Mortgage & Realty Trust,* 123 B.R. 626 (Bankr.C.D.Cal.1991), the bankruptcy court prohibited an investment adviser from including an indemnity provision in its agreement with the bankruptcy estate, finding that the debtor had not offered any evidence of the reasonableness of the provision. The bankruptcy court refused to read the term "reasonable compensation for actual necessary services" in 11 U.S.C. § 327 as applying to indemnification agreements and it was unimpressed with the debtor's assertion that the investment adviser would not accept employment without such an agreement. "If [the adviser] wants to do bankruptcy work, it must live with the terms of employment as authorized by the court in which the case is pending. Further, [the adviser] may not withdraw without Court approval, which could be denied at this point in the case." *Id.* at 631. The bankruptcy court did not rule out indemnification altogether, but held that it should be determined on a case by case basis "after a claim has been asserted for which indemnification is sought." *Id.* In a more recent case, *In re Metricom, Inc.,* 275 B.R. 364 (Bankr. N.D.Cal.2002), the bankruptcy court refused to hold that indemnification agreements were always unreasonable, saying that "anything is possible under the infinite number of potential fact patterns that might ever arise." *Id.* at 371. Rather, it held, determinations of reasonableness have to be made on a case by case basis, with consideration of such matters as whether insurance might be available to protect a financial adviser, whether the estate could have obtained comparable services for the same price from another financial adviser that would forgo indemnification and whether the adviser would have been willing to provide the services without the disputed provision. The bankruptcy court found it telling that other professional advisers were working on the case without agreements for indemnification. *Id.* at 372. *See also In re Gillett Holdings, Inc.,* 137 B.R. 452 (Bankr.D.Colo.1991) (bankruptcy court rejected proposed indemnification provision that would have covered acts or omissions amounting to negligence or misfeasance, but refused to hold indemnity provisions either unacceptable or unnecessary in themselves).

However, in *In re Glosser Bros., Inc.,* 102 B.R. 38, 42 (Bankr.W.D.Pa.1989), the bankruptcy court denied an application for employment of financial adviser, expressing concern that the proposed agreement with its indemnification provision bore signs of a contract of adhesion. The bankruptcy court refused to approve the agreement, which would have included indemnification for all acts or omissions except those constituting gross negligence or willful misconduct and limited the adviser's liability for gross negligence or willful misconduct to disgorgement of fees paid. *In re Drexel Burnham Lambert Group Inc.,* 133 B.R. 13 (Bankr.S.D.N.Y.1991), the bankruptcy court rejected any form of indemnification for financial advisers. "Simply stated, indemnification agreements are inappropriate." *Id.* at 27. The court added that "we know that investment bankers carry coverage to protect themselves from malpractice liability. This expense, like professional fees to negotiate a retention, are part of an investment banker's overhead, usually more than adequately covered by a retention fee." *Id.* The bank-

ruptcy court did not identify the source of its knowledge.

KPMG places considerable reliance on *In re Joan and David Halpern, Inc.,* 248 B.R. 43 (Bankr.S.D.N.Y.2000), a case in which the bankruptcy court rejected the United States Trustee's objections to indemnification provisions for a financial adviser. The court started its analysis by expressing disagreement with those courts that had based their opposition to indemnification provisions on the ground that such provisions are not consistent with fiduciary duties. The bankruptcy court noted that the *Restatement (Second) of Trusts* §§ 222, 247 (1959) acknowledges that a trust agreement may exonerate a trustee for liability except in the case of breach of trust, bad faith or intentional or reckless indifference to the beneficiary's interest and may even provide for indemnity to the same extent as the exoneration, subject to the same limitations. Rather than starting from the premise that indemnification is always improper or against public policy, the bankruptcy court said, "the appropriate inquiry is whether, taken as a whole, the terms of the retention are fair and reasonable, and the retention is in the best interests of the estate." *Id.* at 47.

The Trustee cites some non-bankruptcy cases in which courts have ruled indemnification agreements void as against public policy. In *Erlich v. First National Bank of Princeton,* 208 N.J.Super. 264, 505 A.2d 220 (1984), for instance, the court held that a bank serving as an investment adviser could not be relieved of liability for the bad investment advice it gave the plaintiff, despite the existence of an indemnification clause for negligence in the bank's agreement with the plaintiff. This case is not as strong precedent as it might be: it arises under New Jersey law, rather than under federal bankruptcy law, and the facts of the case suggest that the acts involved

were not ones that would be categorized as ordinary negligence but rather, gross negligence or recklessness. (The adviser had invested most of the plaintiff's money in one stock, despite the stock's volatility and despite his alleged knowledge that the plaintiff had no other savings and wanted a conservative investment policy.)

The Trustee cites *Globus v. Law Research Serv. Inc.,* 418 F.2d 1276, 1288 (2d Cir.1969). Again, this is a case not of ordinary negligence but of recklessness or gross negligence. In *Eichenholtz v. Brennan,* 52 F.3d 478, 484–86 (3d Cir.1995), the question was whether there is a right to indemnification under either the 1933 or 1934 securities laws. The court concluded that allowing claims for indemnification would run counter to the policies underlying the federal securities acts and in particular, Congress's concern to protect unsophisticated investors from fraudulent practices. *Id.* at 485. Allowing indemnification provisions for underwriting contracts would eliminate the underwriter's incentive to fulfill its investigative obligation. *Id. Eichenholtz* underscores some of the concerns that accompany indemnification provisions but it does not answer the question whether the bankruptcy laws allow or forbid such provisions for investment advisers, who do not have an investigative role in bankruptcy proceedings.

For different reasons, it is not decisive that lawyers and accountants are forbidden the benefit of indemnification provisions by the codes of their professions. So long as financial advisers are not bound by similar requirements, it remains necessary to consider whether providing them indemnification is or is not reasonable under the bankruptcy laws.

Lacking the legal support he needs in arguing for a flat prohibition on exculpatory contracts for professionals, the Trustee would be better off trying to insure that

bankruptcy courts undertake the careful scrutiny of contracts for the retention of financial advisers in bankruptcy. Nothing in *Halpern* or in any of the other published cases suggests that indemnification agreements are always reasonable, whatever the situation, or that bankruptcy courts should accept them just because they are described as "usual and customary." Such a description might be nothing more than a self-fulfilling prophesy. If the largest financial advisers include such clauses routinely and bankruptcy courts do not question them, hard-pressed debtors, trustees and creditors' committees will have little option but to accept them as a cost of doing business. The Trustee is correct when he argues that it is not only the persons with a financial stake in the particular bankruptcy who should be heard on these decisions. The Trustee is an important voice in the debate, representing both the "public," which has a stake in insuring the integrity and fairness of the bankruptcy system, and all the persons who will be utilizing the system in the future that will be bound by policy decisions made today. It is worth noting that even in *Halpern*, in which the bankruptcy court criticized the opposition of other courts to indemnification provisions, it modified the provision in dispute to exclude bad faith, breach of fiduciary duty (other than ordinary negligence), breach of trust and self-dealing, in addition to willful or reckless misconduct or gross negligence.

■ Whatever reservations I might have about broad ranging indemnification agreements, I cannot say that they are unreasonable as a matter of law. No court can predict all of the possible circumstances that can arise in bankruptcy proceedings or how difficult it might be to retain financial advisers if indemnification agreements were never permitted. This does not mean, however, that such agreements should be accepted without close examination by the bankruptcy court or that the proponents of such agreements should not be required to show that the provisions are reasonable in the circumstances of the particular bankruptcy proceeding.

I conclude that the United States Trustee has failed to show the absolute invalidity or unreasonableness of indemnification provisions for financial advisers retained to provide assistance in bankruptcy proceedings. Because they may be reasonable in some situations and because the Trustee has not appealed from the bankruptcy judge's determination of reasonableness, I will not reverse the bankruptcy judge's decision to approve the debtor's application to retain KPMG as its financial adviser.

## ORDER

IT IS ORDERED that the decision of the United States Bankruptcy Court denying the United States Trustee's objection to the retention of KPMG Corporate Finance LLC is AFFIRMED to the extent that the denial was based on the Trustee's objection that indemnification provisions in retention agreements are illegal in all circumstances.